IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**325 S. 18th Street, LLC**
441 E. Hector Street
Conshohocken, PA 19428                      Civil Action No.: _____
And
**BRUCE FASSETT,**                          *JURY TRIAL DEMANDED*
*Trustee for Sierra Fassett*
5412 Woodbine Avenue
Philadelphia, PA 19131
                          *Plaintiffs*,
v.
**Philadelphia Community Development Coalition ("PCDC");**
**Toner Law Group, PLLC (formerly Orphanides & Toner LLP);**
**Paul Toner, Esquire;**
**David Champagne;**
**Gregory Bustamante, P.E.;**
**Gardner Fox Associates, Inc.;**
**Mangual Demolition;**
**OCF Holdings, LLC;**
**OCF Realty, LLC;**
**Ke Qing Qing;**
**Zhang Jin Fang;**
**Sherman Toppin;**
**Compass Real Estate;**
**Hilary Lefkowitz-Karaman;**
**Moto DesignShop;**
**Adams Montalbano;**
**City of Philadelphia;**
**Department of Licenses & Inspections;**
**John/Jane Doe Municipal Defendants 1–40;**
**Bustamante Engineering John/Jane Does 41–60;**
**Private Actor John/Jane Does 61–100;**
**Judge Nina Wright Padilla, in her official capacity only;**
**Judge Ideé C. Fox, in her official capacity only;**
**Judge Kenneth J. Powell, Jr., in his official capacity only;**
**Judge Daniel J. Anders, in his official capacity only;**
**Judge Ann Butchart, in her official capacity only,**
                          *Defendants*.

1

<u>COMPLAINT FOR VIOLATIONS OF 42 U.S.C. § 1983 (DUE PROCESS, EQUAL PROTECTION, FIRST AMENDMENT), 42 U.S.C. § 1985, THE FIFTH AND FOURTEENTH AMENDMENTS (TAKINGS), CIVIL RICO (18 U.S.C. §§ 1962(c), 1962(d)), AND RELATED PENNSYLVANIA LAW CLAIMS INCLUDING FRAUD, CIVIL CONSPIRACY, AND CONVERSION</u>

## I.  INTRODUCTION AND NATURE OF THE ACTION:

Plaintiffs 325 S. 18th Street, LLC and Bruce Fassett, Trustee for Sierra Fassett (collectively, "Plaintiffs"), bring this action to redress a multi-year pattern of unconstitutional, unlawful, and fraudulent conduct carried out under color of state law by private actors, municipal officials, and judicial officers acting in their official capacities. Defendants—including the Philadelphia Community Development Coalition ("PCDC"), Toner Law Group (formerly Orphanides & Toner LLP), contractor and engineering partners, favored buyer OCF Holdings/OCF Realty, officials within the Department of Licenses & Inspections ("L&I"), and judicial officers—collaborated to seize, devalue, and convert private real property through the systemic perversion of Pennsylvania's Abandoned and Blighted Property Conservatorship Act ("Act 135").[1]

---

[1] Act 135 authorizes courts to appoint conservators solely to abate code violations and remediate blight where an owner has failed to maintain the property; the conservator must develop and implement a court-approved plan that brings the building into full municipal code compliance, maintain and insure the property, keep detailed accounts, and file a final accounting. The conservatorship terminates only when all violations are corrected, all conservatorship expenses are fully paid or provided for, the owner or lienholder satisfies those obligations, or the property is sold pursuant to court order. *See* Abandoned and Blighted Property Conservatorship Act, Act of Nov. 26, 2008, P.L. 1672, No. 135 §§ 2, 6, 10.

For over a decade,[2] this enterprise operated as a calculated and coordinated pipeline—an unconstitutional petition-mill systematically preying upon and pillaging the properties of the poor for profit through a pattern and practice that consisted of:

• Act 135 petitions containing material misrepresentations and knowingly false allegations

• materially false insurance applications (rendering policies *void ab initio*);

• permit closures without inspection usually sustained by bogus engineering or contractor "completion certifications" (Bustamante Engineers and Mangual Demolition the usual accomplices);

• fabricated or unsupported invoices, where the court—contrary to Act 135 §§ 1106(b)(5), 1106(c)(3), and 1106(d)—failed to require PCDC to show (a) objectively verifiable funds to execute the final plan at the outset, or (b) proof that conservatorship expenses were actually paid at the end, before authorizing outside sales or demanding compensation from the owner;

---

[2] **PCDC was formed at the direction of Orphanides & Toner LLP in June 2015, approximately one year before it filed its first Act 135 petition in *Walsh, et al. v. Isabella, et al.*, PCCP May Term 2016, No. 04133.** This fact was established through sworn testimony in the September 5, 2018 Final Plan Hearing, where PCDC's representative confirmed that the nonprofit was created "on or about June 7, 2015" specifically for Act 135 filings initiated by OTLLP. *See* Final Plan Hr'g Tr. 116:1–9, *Walsh*, Sept. 5, 2018. The second conservatorship, *PCDC v. Fassett*, PCCP December Term 2018, No. 00827, was filed on December 7, 2018.

• false representations of statutory "completion," while the courts either denied

owners any meaningful opportunity to inspect the work or failed to require PCDC

to prove that conservatorship expenses were actually paid out-of-pocket[3] (i.e., ***self-***

***financed rather than extracted from the property's equity***);

• manipulated judicial dockets;

• selective invocation of "mootness" and other legal principles to silence Plaintiffs

while benefiting the enterprise;

• denial of the hearings mandated by Act 135 and or fundamental procedural due

process;

• suppression of evidence, obstruction of justice; and

• insider sales[4] and unlawful deeds executed without authority.

---

[3] PCDC's own Final Act 135 Plans—required by Act 135 § 1106(c)(3)—represented that each conservatorship would be "self-financed." In practice, however, PCDC leveraged the equity of the properties it targeted, including 325 S. 18th Street and 5505 Overbrook Avenue. In the *Walsh* matter, PCDC submitted altered or incomplete check images as purported proof of expenditures, while the court simultaneously denied 325 LLC's requests to inspect property or independently verify any payments. In the *Fassett* matter, Judge Butchart found that PCDC's insurance application contained material misrepresentations, yet still did not require PCDC to prove it paid the conservatorship debts it claimed—other than approximately $4,000 in receipts submitted by third parties, not PCDC.

[4] Mangual Demolition, Inc. ("Mangual") is not a peripheral contractor but a recurring participant in the Act 135 petition-mill enterprise. The record shows that Mangual was (a) repeatedly represented by Toner, McIlhinney, and Orphanides & Toner LLP—including in **Chester Avenue Holdings LLC v. City of Philadelphia & Mangual Demolition, Inc., No. 20-cv-02303-JDW** (E.D. Pa.) and **MREA Investments LLC v. City of Philadelphia & Mangual Demolition, Inc., No. 220202082** (Philadelphia C.P.) ; (b) the preferred contractor for PCDC in both the **325 S. 18th Street** conservatorship (billing over **$14,650** in 2019 and receiving additional payments of **$10,000** and **$4,650** from PCDC President David Champagne) and in the **5105 Overbrook Avenue** conservatorship (Permit No. 1026572—Mangual as demolition contractor) ; (c) the recipient of nearly **$70,000** in claimed "conservatorship expenses" in the Fassett matter with no receipts or proof of payment; (d) the purchaser of an Act 135 property from PCDC—**1524 Ridge**

These (and other) acts resulted in the unconstitutional seizure, control, and conversion of Plaintiffs' properties without due process, equal protection, or just compensation, in violation of:

• the **Fourteenth Amendment** (procedural and substantive due process; equal protection),

• the **Fifth Amendment** (Takings Clause),

• the First Amendment (retaliation for protected petitioning activity),

• **42 U.S.C. §§ 1983 and 1985(3)**,

• the **federal RICO statute** (18 U.S.C. §§ 1962(c), 1962(d)), and

• **Pennsylvania law**, including fraud, civil conspiracy, slander of title, conversion, and unjust enrichment.

The constitutional violations here are <u>not theoretical</u>. They are documented in:

• judicial findings of material misrepresentation (voiding conservator insurance *ab initio*);

---

**Avenue**—conveyed to **Walter Mangual and Kevin Duggan** by deed dated May 9, 2018 while PCDC served as conservator ; and (e) a contractor operating with **10 open L&I violations** and licenses marked "IN VIOLATION" since 2021, yet repeatedly granted permits for Act 135 work (including at 325 S. 18th Street, 5105 Overbrook, and 1516–18 Marston Street) . Taken together, these records demonstrate a closed-loop scheme in which the same actors—PCDC, Toner/McIlhinney/OTLLP, and Mangual—appear interchangeably as petitioners, contractors, litigants, and purchasers, enabling the extraction of equity from Act 135 properties without lawful code-compliant performance.

• drone footage and engineering data showing dangerous, worsening structural conditions;

• L&I violation records contradicting PCDC's certifications;

• court transcripts, dockets and orders demonstrating repeated denial of hearings, cross-examination, and inspection access;

• forged or altered invoices and bank letters;

• unauthorized or ultra vires deeds;

• discriminatory application of, *inter alia*, "mootness" and other provisions of Act 135 to silence Plaintiffs for the benefit of PCDC/OTLLP and other sham Act 135 non-profits represented by OTLLP[5] were heard;

• disciplinary-hearing testimony revealing undisclosed entanglements among judicial officers, PCDC, and counsel; and

• the collapse of Orphanides & Toner LLP[6] and the emergence of Toner Law Group, PLLC (TLG) amid ongoing Act 135 litigation.

---

[5] In addition to PCDC, Toner Law Group, PLLC (formerly Orphanides & Toner LLP) also represents—and was the driving force behind the creation of—multiple affiliated entities, including:
• *Philadelphia Community Growth, Inc. (PCG);*
• *Philadelphia Conservatorship Association, Inc.;*
• *Commonwealth Preservation Alliance, Inc.; and*
• *Philadelphia Community Restorations, Inc.* (affiliated with Sherman Toppin, Esquire)
Collectively, these entities function as extensions of the same operation: sham nonprofits that file Act 135 petitions at the direction and under the control of Toner Law Group, PLLC, as part of its coordinated **petition-mill practice**.
[6]Although Paul Toner, Esquire formally created Toner Law Group, PLLC in September 2024, he continued to operate under the Orphanides & Toner LLP ("OTLLP") banner until March 1, 2025, when he and Attorney Michael McIlhinney relocated to 1717 Arch Street and began operating

In the Fassett matter, Judge Ann Butchart expressly found that PCDC submitted insurance applications containing material misrepresentations. Under binding Pennsylvania law,[7] **a material misstatement in an insurance application voids the policy *ab initio* as a matter of law**,[8] regardless of whether the insurer formally rescinds it. Despite this controlling authority, Judge Butchart declined to apply the legal consequence of her own findings. Instead of terminating the conservatorship, voiding PCDC's authority, and restoring possession, she ordered only that PCDC reimburse Plaintiff Fassett for "the value of the premiums" paid during the five-year conservatorship period—even though Pennsylvania law makes clear that a policy procured through material misrepresentation is a nullity from inception and confers no lawful authority on the putative insured.

---

solely as Toner Law Group. Notably, OTLLP's collapse coincided with a substantial default: by July 2025, OTLLP had accrued **over $100,000 in unpaid rent**, outstanding since January 2025. *See* Phila. Municipal Ct., Landlord–Tenant Div., No. LT-25-07-0176068.

[7] See *Prudential Prop. & Cas. Ins. Co. v. Sartno*, 588 Pa. 205, 903 A.2d 1170, 1178–79 (2006) (holding that when an insured makes a material misrepresentation on an insurance application, the resulting policy is void *ab initio* because the insurer "never agreed to insure the risk actually presented"); *Aetna Cas. & Sur. Co. v. Ericksen*, 639 A.2d 34, 40 (Pa. Super. Ct. 1994) (affirming declaratory judgment that an insured's material misrepresentations "rendered the policy void ab initio," relieving the insurer of all obligations); *Evans v. Penn Mut. Life Ins. Co.*, 322 Pa. 547, 186 A. 133, 137 (1936) (holding that material false statements in an application "vitiate the policy from its inception," making it as though "no contract ever existed").

[8] **"While in possession of the building, the conservator shall: (1) Maintain, safeguard and insure the building."**
—Act 135, § 6(b)(1), **68 P.S. § 1106(b)(1)**. See also, **68 P.S. § 1106(a)(9)** which provides, in relevant part, a court-appointed conservator has the power to: **"Affirm, renew or enter into contracts providing for insurance coverage on the building."**

In the 325 S. 18th Street matter, the same material misrepresentations were presented to Judge Kenneth J. Powell, Jr., who refused to address them, denied all inspection requests, barred all hearings for years, repeatedly declared "finality," and selectively applied "mootness" and "closed docket" restrictions to prevent Plaintiffs from obtaining process—while granting PCDC and OCF full access to the judicial system more than three years after purported orders declaring "finality" (the end of the trial court litigation).[9]

The 2024–2025 disciplinary proceedings involving Plaintiffs' counsel[10] further exposed sworn testimony, documents, and procedural anomalies confirming structural defects in the administration of Act 135 cases. Testimony revealed undisclosed CLE collaborations between judicial officers and PCDC's counsel, *ex parte* entanglements, assignment irregularities, and continued issuance of orders by judges lacking jurisdiction or acting post-recusal. These facts are not

---

[9] This action arises out of constitutional violations occurring in **Walsh, et al. v. Isabella, et al., Phila. C.P., May Term 2016, No. 04133**. The docket shows that every filing submitted by 325 S. 18th Street, LLC through Attorney Olivia Adams— including the **Motion to Disqualify Judge Powell** (Control No. **62-22074362**, filed July 25, 2022) and its related filings (Control Nos. **33-22075133, 41-22082841, 23-22083523**, reassigned Aug. 31, 2022)—was dismissed as "moot," rejected as "procedurally improper," or refused for lack of jurisdiction following the trial court's October 7, 2022 "final disposition" order and 42 Pa.C.S. § 5505.

Yet more than three years later, the court accepted and scheduled hearings on **PCDC's Motion to Terminate the Agreement of Sale** (Control No. **25094370**, filed Sept. 22, 2025) and **OCF's Petition to Intervene** (Control No. **25100655**, filed Oct. 3, 2025). Unlike 325 LLC's filings, these motions were not deemed moot, untimely, or jurisdictionally barred. The reopening of a case the court long declared closed—**but only for PCDC and OCF**—while refusing 325 LLC identical access to judicial process forms a core basis of Plaintiffs' Equal Protection claim.

[10] *Office of Disciplinary Counsel v. Olivia A. Adams, Esquire,* **54 D.B. 2024** (still pending).

offered to seek damages from judges, but to establish the contextual state action, systemic breakdown, and ongoing need for declaratory and injunctive relief.

In sum, Plaintiffs bring this action to: expose and redress the unconstitutional seizure, forced conversion, and uncompensated taking of their properties; to remedy years of due process and equal protection violations; to obtain declaratory and injunctive relief halting the ongoing misconduct; to restore legal title; and to seek ***compensatory***, ***treble****,* and ***punitive damages*** against the private and municipal actors who orchestrated, enabled, or profited from the enterprise.

## II.  JURISDICTION AND VENUE:

## A. Federal Question Jurisdiction – 28 U.S.C. § 1331

1. This Court has original jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including:

   • the Fifth Amendment (Takings);

   • the Fourteenth Amendment (Procedural Due Process, Substantive Due Process, Equal Protection);

   • the First Amendment (retaliation and access to courts);

   • 42 U.S.C. § 1983 (deprivation of rights under color of state law);

   • 42 U.S.C. § 1985(3) (civil rights conspiracy); and

   • 18 U.S.C. §§ 1962(c) and (d) (RICO and RICO conspiracy).

2. These federal violations are substantial, ongoing, and form the core of Plaintiffs' claims.

**B. RICO Jurisdiction – 18 U.S.C. § 1964(c)**

3. Jurisdiction is independently proper under 18 U.S.C. § 1964(c) because Plaintiffs suffered concrete injury to their property and business interests as a direct and foreseeable result of Defendants' violations of 18 U.S.C. §§ 1962(c) and 1962(d).

4. Defendants engaged in repeated predicate acts—including mail fraud, wire fraud, obstruction of justice, and financial-institution fraud—over the course of over a decade, directly causing Plaintiffs' loss of property, equity, business opportunities, and other damages.

**C. Civil Rights Jurisdiction – 28 U.S.C. § 1343(a)**

5. This Court has jurisdiction under 28 U.S.C. § 1343(a)(3)–(4) because Plaintiffs seek to redress the deprivation of constitutional rights under color of state law and the conspiracy to deny equal protection and equal privileges under 42 U.S.C. §§ 1983 and 1985(3).

**D. Supplemental Jurisdiction – 28 U.S.C. § 1367(a)**

6. This Court exercises supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' state-law claims—including claims of fraud, civil conspiracy, conversion, slander of title, unjust enrichment, veil-piercing, and quiet

title—because these claims arise from the same case or controversy as the

federal claims.

7.  The state-law claims share a common nucleus of operative fact with the

federal claims under Article III.

**E. Sovereign Immunity and *Ex parte Young***

8.  Plaintiffs seek prospective declaratory and injunctive relief against

municipal actors and *judicial officers in their official capacities only*, to halt

ongoing violations of federal law. Such relief is expressly authorized under

*Ex parte Young*, 209 U.S. 123 (1908).

9.  Plaintiffs do not seek:

(a) monetary damages from judges;

(b) retrospective relief barred by sovereign immunity; or

(c) damages for judicial acts.

10. Allegations involving judicial officers are included solely to establish: (1)

state action for § 1983 liability; (2) the systemic procedural breakdown; and

(3) the necessity of federal prospective relief.

**F. Standing**

11. Plaintiffs have Article III standing because they suffered concrete injuries,

including:

• loss of real property;

- loss of equity;

- loss of redemption rights under Act 135 § 1110;

- unlawful liens[11] and encumbrances;

- slander of title;

- economic damages, including lost rental value;

- deprivation of constitutional rights;

- interference with access to courts; and

- ongoing and imminent harm requiring injunctive relief.

12. These injuries were caused by Defendants' conduct and are redressable by damages, declaratory relief, injunctive relief, and RICO remedies available in this Court.

## G. Venue – 28 U.S.C. § 1391(b)

13. Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b) because:

---

[11] By Order dated March 22, 2021, Judge Kenneth J. Powell declared the conservatorship concluded and recognized 325 S. 18th Street, LLC as the owner, finding that 325 LLC had the financial and professional capacity to maintain the property. The Order also recited that, at the March 19, 2021 Rule to Show Cause hearing, PCDC's counsel Paul Toner, Esquire, purportedly established proof of PCDC's costs and fees, and the Court approved a conservatorship lien in the amount of **$1,036,712.85**. However, on March 29, 2021, Judge Powell **granted PCDC's Motion for Reconsideration** and **vacated the March 22, 2021 Order in its entirety**—including the $1,036,712.85 lien. Despite this vacatur, on **April 19, 2021**, PCDC and OTLLP **recorded the vacated lien** in the Philadelphia Office of the Recorder of Deeds (Document ID **53817690**), where it remained of record despite multiple demands by 325 LLC for correction. *See* **Exhibit "A" (March 22, 2021 Order; March 29, 2021 Vacatur; April 19, 2021 Recorded Lien).**

• the properties at issue—325 S. 18th Street and 5105 Overbrook Avenue—are located within this District;

• the relevant events, omissions, transactions, and fraudulent acts occurred in Philadelphia County;

• Defendants reside in, transact business within, or operate in this District; and

• the judicial proceedings forming part of the claim occurred in the First Judicial District of Pennsylvania, located in Philadelphia.

## H. Personal Jurisdiction

14. This Court has personal jurisdiction over all Defendants because they reside or conduct business in Pennsylvania, purposefully directed activities toward Plaintiffs and these properties, and engaged in coordinated conduct in Philadelphia designed to seize, encumber, or dispose of Plaintiffs' property and rights.

15. Personal jurisdiction is independently proper under Pennsylvania's long-arm statute, 42 Pa.C.S. § 5322, and is consistent with the Fourteenth Amendment's Due Process Clause.

## I. *Rooker–Feldman* Does Not Apply

16. The *Rooker–Feldman* doctrine does not bar jurisdiction because Plaintiffs do not seek review or reversal of state-court judgments; instead, they challenge

fraud in the procurement of orders, the enforcement of void orders (including the October 7, 2022 "finality" decree), the denial of mandatory Act 135 protections under legislatively enacted provisions, acceptance of appellate records without a required Pa.R.A.P. 1925 opinion, and the structural breakdown of state procedures.

17. **Plaintiffs' injuries arise from Defendants' misconduct—not from the state-court judgments themselves**—and constitute independent claims under *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010).

18. Federal jurisdiction is preserved under *Zinermon v. Burch, Logan v. Zimmerman Brush*, *Mitchum v. Foster*, and *Great Western Mining*, where state procedures are nonexistent, unavailable, or structurally compromised by fraud.

## J. Conclusion of Jurisdiction

19. This Court is the proper forum for redressing Plaintiffs' injuries because:

   • federal constitutional rights were violated;

   • state procedures have proven structurally incapable of providing relief;

   • federal RICO violations must be adjudicated in federal court;

   • the unlawful conduct remains ongoing; and

   • only prospective federal relief can prevent further harm.

## III. PARTIES:

A. *Plaintiffs*

**20.** Plaintiff **325 S. 18th Street, LLC** ("325 LLC") is a Pennsylvania limited liability company whose sole member is **Anthony M. Rufo**, a resident of Gladwyne, Pennsylvania. Its principal address for this action is 441 E. Hector Street, Suite 103, P.O. Box 31, Conshohocken, Pennsylvania 19428. 325 LLC is the fee-simple owner of **325 S. 18th Street, Philadelphia, Pennsylvania** ("the 325 Property"). 325 LLC was deprived of possession, control, equity, due-process protections, and its statutory right of redemption under Act 135 § 1110 as a direct result of the unlawful conduct alleged herein.

**21.** Plaintiff **Bruce Fassett, Trustee for Sierra Fassett** ("Fassett") is the duly appointed trustee and authorized representative of beneficiary **Sierra Fassett**, the equitable owner of **5105 Overbrook Avenue, Philadelphia, Pennsylvania** ("the Overbrook Property"). Fassett brings this action on her behalf. The Overbrook Property was unlawfully seized, encumbered, and conveyed under Act 135 without due process or just compensation.

## B. PRIVATE-ACTOR DEFENDANTS

### *PCDC and Associated Individuals*

**22.** Defendant **Philadelphia Community Development Coalition, Inc.** ("PCDC") is a Pennsylvania nonprofit corporation that has functioned as a predatory conservator, filing hundreds of Act 135 petitions. Acting jointly with municipal officials, judicial officers, engineers, architects, contractors, real-estate brokers, and attorneys, PCDC used Act 135 to seize properties, strip equity, fabricate expenses, and engineer insider transfers under color of state law.

**23.** Defendant **David Champagne**, President of PCDC, is a principal architect of the enterprise. He directed fraudulent insurance applications; targeted vulnerable and high-equity properties; forged or altered financial instruments; approved false engineering certifications; misappropriated over $100,000 in federal SBA funds to finance Act 135 litigation; submitted padded or fabricated invoices; and executed an ultra vires deed transferring the Overbrook Property. He acted individually and under color of state law.

### PCDC's Attorneys and Law Firms

**24.** Defendant **Orphanides & Toner LLP** ("OTLLP") is a defunct Pennsylvania law firm that served as PCDC's long-time counsel. OTLLP collapsed financially around March 1, 2025, followed by a July 2025 commercial-rent lawsuit exceeding

$100,000. OTLLP jointly participated with PCDC, L&I, engineers, architects, and brokers in the unlawful seizure and disposition of Plaintiffs' properties.

**25.** Defendant **Toner Law Group, PLLC** ("TLG") is a Pennsylvania law firm formed in September 2024 by Paul Toner as OTLLP's direct successor. TLG continued OTLLP's Act 135 practice, clientele, and operations, excluding only former partner David Orphanides. TLG is liable under veil-piercing and successor-liability doctrines.

**26.** Defendant **Paul Toner, Esquire** is TLG's managing partner and former OTLLP partner. Toner litigated, directed, and orchestrated Act 135 petitions; submitted materially false filings; co-presented undisclosed Act 135 CLEs with Judge Fox; received privileged communications while administratively suspended; and wielded influence over L&I enforcement while serving on the Mayor's L&I Advisory Working Group. He acted jointly with municipal actors and under color of state law.

**Engineers, Architects, and Construction Entities**

**27.** Defendant **Gregory Bustamante, P.E.**, operating as **Bustamante Engineers**, prepared fraudulent engineering reports, false roof and façade assessments, inaccurate structural certifications, and knowingly unsupported "completion" reports that enabled PCDC to obtain and maintain conservatorship authority.

**28.** Defendant **Gardner Fox Associates, Inc.** generated inflated, unsupported, and sometimes fictitious invoices, including charges for work never performed or performed in unsafe or substandard conditions.

**29.** Defendant **Hybar Construction**, operated by **Adam DelGotte**, billed approximately $40,000 for "framing" work at the 325 Property that later inspections and drone footage established either violated the Philadelphia Property Maintenance Code or was not performed at all. Hybar submitted padded invoices in coordination with PCDC. DelGotte also served as the construction manager for OCF's Fitler Construction.

**30.** Defendant **Moto Design Shop** is a Philadelphia architectural firm whose plans for PCDC contradicted PCDC's asserted remediation and whose later plans for OCF required demolition of PCDC's supposed improvements. Moto acted jointly with PCDC and OTLLP/TLG to facilitate fraudulent court submissions.

**31.** Defendant **Adam Montalbano**, owner of Moto Design Shop, designed the redevelopment plans for PCDC's purported remediation of the 325 Property and served as part of PCDC's Act 135 "team" from 2017–2021. Paid thousands of dollars (billed to 325 LLC), he knowingly advanced the enterprise by providing an appearance of legitimacy for a remediation plan never executed as required by Act 135 and the **PM Code**.

**Mangual Defendants (Contractors, Purchasers, and Co-Conspirators)**

**32.** Defendant **Mangual Demolition, Inc.** ("Mangual") is a Philadelphia demolition contractor that served as a core participant in the Act 135 enterprise. Mangual acted jointly with PCDC, OTLLP/TLG, OCF, and affiliated municipal and private actors by performing (or purporting to perform) Act 135 work, submitting fraudulent invoices, engaging in insider acquisition of Act 135 properties, and coordinating litigation strategy with PCDC's counsel. Mangual's enterprise-related conduct includes:

• **Representation by OTLLP/TLG in Multiple Civil Actions**

- Repeatedly represented by **Paul Toner** and **Michael McIlhinney** in:

  ▪ *Chester Avenue Holdings LLC v. City of Philadelphia & Mangual Demolition, Inc.*, No. 20-cv-02303-JDW (E.D. Pa.).

  ▪ *MREA Investments LLC v. City of Philadelphia & Mangual Demolition*, No. 220202082 (Phila. C.P.).

  ▪ *ARL Baruch Corp. v. City of Philadelphia & Mangual Demolition*, No. 220802821 (Phila. C.P.).

- Demonstrates long-standing, intertwined legal representation with PCDC's counsel.

• **Direct Participation in the 325 S. 18th Street Conservatorship**

- Submitted **$14,650** invoice (Invoice #1138, May 8, 2019).

- Paid off-ledger by PCDC President **David Champagne**:

  ▪ **$10,000** (Sept. 15, 2019)

  ▪ **$4,650** (July 1, 2020).

- Performed additional "repairs" in 2022–2023 despite **10 open L&I violations** and licenses in **IN VIOLATION** status.

- Subject to **STOP WORK ORDER**, but still used by PCDC.

• **Nearly $70,000 in Claimed Charges in the Overbrook Conservatorship**

- PCDC submitted **approximately $70,000** in invoices attributed to Mangual for 5105 Overbrook.

- Provided **no receipts** or proof of payment.

- Permit No. **1026572** (Dec. 20, 2019) lists Mangual as demolition contractor.

• **Insider Acquisition of Act 135 Property**

- PCDC conveyed **1524 Ridge Avenue** (Act 135 property) to **Walter Mangual and Kevin Duggan** on May 9, 2018—demonstrating Mangual as both contractor and favored purchaser.

• **Financial and Business Ties with PCDC President David Champagne**

- Shared transactions with **Tolo Properties**, Champagne's affiliated entity.

- Corroborated off-ledger payments and coordinated contracting.

• **Preferential Treatment from L&I Despite Violations**

- Received permits and approvals at 325 S. 18th Street, 5105 Overbrook, and 1516–18 Marston despite open violations and STOP WORK ORDER.

- Reflects municipal actor alignment necessary for § 1983 and RICO joint-action liability.

• **Litigation Alignment with PCDC's Counsel**

- Appears repeatedly in litigation with OTLLP/TLG, indicating coordinated strategy and enterprise participation.

**33.** Through this conduct, Mangual materially furthered the enterprise's objectives by inflating conservatorship charges, supporting insider transfers, enabling fraudulent filings, and facilitating the deprivation of Plaintiffs' property and constitutional rights.

**Real Estate Entities and Professionals**

**34.** Defendants **OCF Holdings LLC** and **OCF Realty LLC** ("OCF"), controlled by **Ori Feibush**, participated in the enterprise by soliciting intervention, directing plans requiring demolition, producing articles used in PCDC's original petition, acting as pre-selected purchasers, attempting to enforce an invalid Agreement of Sale, and coordinating construction work tied to PCDC's false remediation narrative.

**35.** Defendant **Ori Feibush** personally directed intervention, redevelopment plans requiring demolition of alleged Act 135 remediation, and participated in insider acquisition efforts.

**Real Estate Brokers and Facilitators**

**36.** Defendant **Compass Real Estate** facilitated unlawful listings and marketing of both properties, concealed structural defects, and collaborated with PCDC to position the sales despite known fraud.

**37.** Defendant **Hilary Lefkowitz Karaman**, a Compass agent, listed the 325 Property in 2020 without judicial approval, concealed defects, manipulated comparables, and aided PCDC and OCF in orchestrating insider transfers.

**Attorneys Facilitating the Enterprise**

**38.** Defendant **Sherman Toppin, Esquire** represented the Fassetts until November 28, 2021, later produced an "expert report" supporting PCDC's inflated charges, and provided false testimony at the July 14, 2022 Fee & Cost hearing. Less than a year later, he announced an "Of Counsel" affiliation with OTLLP, and in 2025 represented PHL Restorations, another sham nonprofit within OTLLP's Act 135 petition-mill.

**Overbrook Titleholder Defendants**

**39.** Defendants **Ke Qing Qing** and **Zhang Jin Fang** ("the Overbrook Titleholders") received purported title to 5105 Overbrook Avenue by deed dated February 28, 2024, executed by Champagne. The conveyance was **ultra vires and void ab initio** because PCDC never possessed valid title, the Agreement of Sale expired April 25, 2022, PCDC engaged in insurance fraud, and PCDC never proved payment of conservatorship costs as required by Act 135 § 1106(d).

**40.** The Overbrook Titleholders hold the property subject to Plaintiffs' superior rights and are properly named for declaratory relief, quiet title, fraudulent conveyance, conversion, civil conspiracy, unjust enrichment, and RICO remedies.

**Unknown Private Actors**

**41. John/Jane Doe Private Actors 41–100** are individuals or entities who participated in, facilitated, or profited from fraudulent reports, fabricated invoices, invalid deed transfers, insurance fraud, architectural misrepresentations, or other acts advancing the enterprise.

**C. MUNICIPAL DEFENDANTS**

**42.** Defendant **City of Philadelphia** is a municipal corporation which, through L&I and the Historical Commission, adopted customs and practices enabling fraudulent engineering submissions, permit closures without inspection, non-enforcement of code violations, and discriminatory denial of Plaintiffs' rights.

**43.** Defendant **Department of Licenses & Inspections** ("L&I") knowingly

accepted fraudulent reports, closed permits without inspections, delayed

enforcement, and collaborated with PCDC and Toner.

**44.** Defendant **Leonard Reuter, Esquire**, Chief Deputy City Solicitor for L&I,

directed that 325 LLC's counsel copy Toner on Historical Commission

communications even while Toner was administratively suspended. Reuter

previously worked at OTLLP. He acted jointly with PCDC and Toner to suppress

adverse evidence and obstruct Plaintiffs' rights.

**45.** Defendant **Philadelphia Historical Commission** acted jointly with L&I and

PCDC by allowing Toner undue influence and failing to enforce code

requirements.

**46. John/Jane Doe L&I Officials 1–20** approved fraudulent close-out reports,

allowed permit closures without inspections, or improperly withheld enforcement.

**47. John/Jane Doe Engineers & Inspectors 21–40** approved fraudulent

certifications or acted with deliberate indifference.

**D. JUDICIAL DEFENDANTS (PROSPECTIVE RELIEF ONLY)**

**48. Judge Ideé C. Fox**

**49. Judge Kenneth J. Powell, Jr.**

**50. Judge Daniel Anders**

**51. Judge Ann Butchart**

**52. Judge Nina Wright Padilla (President Judge)**

Each acted in administrative or supervisory capacities relevant to the ongoing

constitutional violations and is sued **solely in an official capacity** under *Ex parte*

*Young* for prospective declaratory and injunctive relief.

**53.** Plaintiffs do **not** seek any monetary damages from any judicial defendant.

## IV.   DISTINCTION FROM PRIOR FEDERAL LITIGATION (NOT PRECLUDED):

**54.** Defendants will likely invoke the 2021 federal action, *Rufo v. City of*

*Philadelphia*, E.D. Pa. No. 2:21-cv-04721 (aff'd mem., 3d Cir. No. 22-3092), to

argue abstention or preclusion. That reliance is misplaced. This action is predicated

on **new facts, new parties, new injuries, and post-2021 misconduct**[12] that did

not exist—and could not have been raised—during the earlier litigation.

**55.** The 2021 litigation[13] **principally** covered the early-stage conduct (2016–2018)

in the 325 S. 18th Street matter before Judge Nina Wright Padilla. It preceded the

core developments that give rise to this case, including:

---

[12]Any reference to pre-2021 events is included strictly for context and to establish the racketeering pattern and newly discovered fraud that remained hidden due to Defendants' deliberate concealment. These facts were not reasonably available to Plaintiffs during the 2021 litigation and were uncovered only after Defendants' misconduct came to light.
[13]Dismissed without prejudice as to all Defendants except Judge Powell and Judge Fox—who were improperly sued in their individual capacities in the prior action. In this action, they are sued solely in their official capacities under *Ex parte Young*.

**(a)** judicial findings confirming that PCDC made material misrepresentations on insurance applications;

**(b)** application of Pennsylvania law holding such misrepresentations render policies ***void ab initio***;

**(c)** the February 28, 2024 deed purporting to transfer 5105 Overbrook Avenue to downstream purchasers;

**(d)** the 2022–2025 L&I permit-closing fraud, including uninspected "close-outs";

**(e)** discriminatory "mootness" and "closed-docket" barriers applied exclusively to Plaintiffs, while PCDC/OCF filings proceeded on the merits;

**(f)** the retaliatory disciplinary prosecution initiated shortly after counsel entered her appearance in the Fassett litigation;

**(g)** discovery of forged and unsupported invoices, altered bank letters, and contradictory architectural plans revealing OCF's intent to demolish or redo much of PCDC's purported remediation;

**(h)** dissolution of OTLLP (March 2025) and formation of Toner Law Group (September 2024), relevant to enterprise continuity and veil-piercing; and

**(i)** previously unknown actors whose involvement was undiscoverable in 2021— including Montalbano and Estepani of Moto Design Shop (whose plans contradicted PCDC's filings), Compass/HLK (who marketed the 325 Property

while concealing hazards), and attorney Sherman Toppin (whose post-withdrawal "expert report" was used to validate PCDC's invoices).

**56.** The 2021 action did not include Plaintiff **Bruce Fassett, Trustee**, the **Overbrook Titleholder Defendants**, or numerous private actors and municipal participants whose misconduct was revealed only through 2022–2025 evidence (including Gardner Fox, Moto Design Shop, Compass, HLK, and Toppin).

**57.** The Third Circuit's 2022 memorandum disposition addressed a limited pre-2018 record. It did not—and could not—adjudicate the later-discovered fraud, the void-insurance determinations, the ultra vires February 28, 2024 deed, the discriminatory docket manipulation, or the ongoing violations forming the gravamen of this action. Accordingly, **Rooker–Feldman, res judicata, and collateral estoppel do not apply.**

**B. Overview of the Act 135 Scheme**

**58.** This case arises from a multi-year pattern of unconstitutional conduct by PCDC; its counsel (OTLLP/Toner Law Group and Paul Toner); affiliated contractors (including Gardner Fox, Hybar, and Mangual); engineers (including Gregory Bustamante); real-estate partners (including OCF); architectural collaborators (including Moto Design Shop, Adam Montalbano, and Ben Estepani); favored realtors (including Compass Real Estate and Hilary Lefkowitz-Karaman); municipal actors within L&I; and judicial officers acting in their official

capacities. Together, they enabled, facilitated, and executed property takings through a corrupted application of Act 135.

**59.** Rather than serving as a blight-remediation statute, Act 135 was weaponized into a private property-acquisition pipeline, using:

• fraudulent engineering certifications;

• materially false insurance applications (void ab initio);

• fabricated or unsupported invoices;

• uninspected permit closures;

• manipulated dockets and selective "mootness";

• insider sales to pre-selected purchasers;

• suppression of owner defenses; and

• denial of all meaningful hearings.

**60.** As applied to Plaintiffs, Act 135 became a vehicle to seize control of their properties, inflate charges, proclaim "completion" without code compliance, force insider transfers, and silence owners via selective docket-closing practices while PCDC/OCF filings remained fully adjudicated.

## C. Judicial Participation and Selective Enforcement

**61.** The enterprise depended upon judicial officers who, acting in their official capacities (no damages sought), selectively denied hearings, refused to adjudicate dispositive fraud/insurance issues, invoked "mootness" exclusively against

Plaintiffs, issued *ex parte* orders, and allowed Act 135 to operate outside statutory limits.

**62.** Judge **Nina Wright Padilla** presided over the early period (Dec. 2016–Feb. 22, 2018), rubber-stamping PCDC filings, failing to enforce statutory prerequisites, and—after recusal—continuing to issue orders favoring PCDC. As President Judge, she has administrative authority under the CJA yet failed to prevent discriminatory docket manipulation and jurisdiction-less scheduling.

**63.** Judge **Idée C. Fox** reassigned the matter to Judge Powell on April 5, 2018 without providing guidance, despite acknowledging a "tremendous" body of unwritten Act 135 procedures. She issued subsequent orders post-reassignment.

**64.** Judge **Kenneth J. Powell, Jr.** repeatedly declared "finality," denied all hearings requested by Plaintiffs, refused to apply void-ab-initio insurance law, and used "mootness," "non-justiciability," and "closed docket" labels **exclusively** against Plaintiffs—while permitting full hearings on PCDC's and OCF's filings years after jurisdiction allegedly ended.

**65.** Judge **Daniel Anders** declared the 325 matter a "closed case" on November 13, 2024, extinguishing access to judicial process despite multiple pending motions.

**66.** In the Fassett matter, Judge **Ann Butchart** found that PCDC made material misrepresentations on insurance applications (voiding the policy ab initio) yet nevertheless permitted PCDC to retain control, funds, and authority.

## D. L&I's Permit-Closing Fraud and Municipal Participation (Monell Overview)

**67.** L&I sustained the enterprise by:

**(a)** accepting fraudulent engineering reports;

**(b)** closing permits without inspection;

**(c)** refusing to enforce obvious violations against PCDC; and

**(d)** issuing approvals contrary to on-site conditions—conduct amounting to an actionable municipal custom under *Monell*.

**68.** Throughout, permits were closed only on paper, PCDC certified "completion," and courts denied hearings via selective "mootness," while public testimony and records showed longstanding coordination among L&I leadership, PCDC, and OTLLP/Toner Law Group.

## E. Newly Discovered Evidence (2022–2025)

**69.** Evidence uncovered between 2022 and 2025 includes:

**(a)** judicially confirmed void-ab-initio insurance;

**(b)** drone footage and engineering data showing worsening hazards at the 325 Property;

**(c)** forged and unsupported invoices and altered bank letters;

**(d)** Moto Design Shop/Estepani plans showing OCF intended to demolish much of PCDC's purported remediation;

**(e)** the February 28, 2024 Overbrook deed executed ultra vires by PCDC President David Champagne;

**(f)** dissolution of OTLLP, formation of Toner Law Group, and the July 2025 lawsuit for more than $100,000 in unpaid rent—demonstrating enterprise continuity and veil-piercing factors.

## F. Continuing Violations and Present Controversy

**70.** The violations are ongoing: Plaintiffs remain denied access to hearings and inspection; the 325 docket remains closed to Plaintiffs but open to PCDC and OCF; L&I non-enforcement and fraudulent permit closures persist; and the ultra vires Overbrook deed remains recorded. Under the **continuing-violations doctrine**, each act sustains timeliness and federal jurisdiction.

## G. This Action Does Not Seek to Relitigate State Proceedings

**71.** Plaintiffs do **not** seek reversal of any state judgment. Rather, they challenge:

• extra-judicial conduct under color of state law;

• fraudulent procurement of orders;

• enforcement of void orders;

• unconstitutional municipal customs and policies; and

• joint participation of private actors with state actors.

They seek remedies never adjudicated in state court: federal constitutional damages, declaratory and injunctive relief, RICO damages, quiet title, and *Monell* liability.

**72.** Because this action is based on post-2021 facts, newly revealed actors, new constitutional injuries, and ongoing violations, no abstention or preclusion doctrine applies.

**H. Condensed Scheme Summary (for Judicial Clarity)**

**73.** In sum, Act 135 was transformed into a for-profit pipeline:

**fraudulent engineering → void insurance → court access/control → fictive "completion" → uninspected permit closures → insider sales → owners silenced through selective "mootness" and "closed docket" rulings.**

**74.** Plaintiffs suffered uncompensated takings, denial of process, property loss, and discriminatory enforcement—injuries squarely within federal jurisdiction and actionable under § 1983, *Monell*, and RICO.

**V.  FACTUAL BACKGROUND:**

**A. Overview of Properties, Ownership, and the Timeline of State Action**

**75.** This case arises from the unlawful seizure, destruction, and conversion of two privately-owned Philadelphia properties—**325 S. 18th Street** (owned by Plaintiff **325 S. 18th Street, LLC**) and **5105 Overbrook Avenue** (beneficially owned by **Sierra Fassett**, represented by Trustee Bruce Fassett)—through a pattern of fraud,

unconstitutional municipal practices, manipulated judicial processes, and coordinated racketeering activity, executed under the guise of the Pennsylvania Abandoned and Blighted Property Conservatorship Act ("Act 135").

**76.** The 325 Property is owned in fee simple by **325 LLC**, whose sole member, **Anthony M. Rufo**, purchased the property on **April 28, 2017**, and invested over **$800,000** in acquisition,[14] secured financing, litigation expenses, and preservation of legal title. (The April 28, 2017, deed of conveyance is a public record in the Philadelphia Office of the Recorder of Deeds, **Document I.D. No.: 53206087**).

**77.** The Overbrook Property is beneficially owned by **Sierra Fassett**, with her trustee, **Bruce Fassett**, possessing full authority to protect and litigate the Trust's property rights. The Fassett family-maintained ownership for years before PCDC sought to seize it through fraudulent representations and deficient legal proceedings. (Plaintiff Fassett's deed to 5505 Overbrook is recorded in the City of Philadelphia Office for the Recorder of Deed under **Document I.D. No.: 51130949**, it was recorded March 1, 2005, for consideration of $170,000).

---

[14] Judge Powell repeatedly acknowledged on the record that 325 LLC's sole member, Anthony Rufo, had already paid *substantial, six-figure sums* toward 325 S. 18th Street. See **Final Plan Hearing, Sept. 7, 2018**, pp. 70, 77, 79 ("*I know it's six figures*").
Later, during the **Fees & Costs Hearing on July 14, 2022**, Powell stated directly to counsel: "*You've given this woman a **million dollars**…now it will be **1.8 million**.*" (**July 14, 2022 Tr.**, pp. 56–69).

**78.** Beginning in **2016** (325 Property) and **December 7, 2018** (Overbrook Property), the **Philadelphia Community Development Coalition ("PCDC")**, represented by **Orphanides & Toner LLP ("OTLLP")** and later **Toner Law Group, PLLC ("TLG")**, launched Act 135 petitions with the objective of obtaining possession, extracting unverified payments, manufacturing "completion" certifications, and forcing insider sales to aligned contractors, developers, and straw purchasers.

**79.** From inception, PCDC, its counsel, and affiliated enterprise actors—

**Bustamante Engineers, Gardner Fox, Hybar Construction, Mangual Demolition, Moto Design Shop, Compass Real Estate, OCF Realty**, and select officials within **L&I**—executed the same coordinated pattern:

• fraudulent engineering reports;

• materially false insurance applications;

• fabricated or unsupported invoices;

• permit closures without inspection;

• judicial tolerance of non-compliance;

• suppression of owner challenges through selective "mootness"; and

• ultimate conveyance to insiders.

**80.** These acts were enabled by the Philadelphia Court of Common Pleas—through the conduct of **Judge Nina Wright Padilla, Judge Idée C. Fox, Judge Kenneth J. Powell, Jr., Judge Daniel Anders,** and **Judge Ann Butchart**—whose discriminatory enforcement of procedural rules and refusal to permit statutory review deprived Plaintiffs of due process, equal protection, and access to the courts.

**81.** The Pennsylvania Commonwealth Court compounded these injuries by refusing to apply the Pennsylvania Rules of Appellate Procedure, mischaracterizing the record, ignoring dispositive facts, fabricating waiver, refusing to consider evidence, and issuing opinions that were factually and legally unsupported—conduct that constitutes **independent constitutional violations** and forms a central component of Plaintiffs' claims.

**B. How PCDC and Its Agents Initiated Act 135 Proceedings Through Engineering Fraud and Void-Ab-Initio Insurance**

**82.** PCDC and its counsel initiated Act 135 petitions using **false engineering reports** authored by **Gregory Bustamante, P.E.**, whose certifications repeatedly contradicted on-site conditions visible through:

• drone footage;

• photographs;

• neighbor complaints;

• permit history; and

• L&I violation records.

**83.** Bustamante's reports contained materially false statements relating to:

• roof stability;

• façade conditions;

• party wall integrity;

• water infiltration;

• fire hazards;

• interior conditions;

• and the existence of "emergency" structural conditions that did not exist.

**84.** To support these engineering submissions, PCDC submitted **insurance applications containing material misrepresentations**, including falsified statements regarding:

• occupancy;

• vacancy;

• construction activity;

• habitability;

• contractor usage;

• and risk factors.

**85.** As later judicially confirmed in the **Overbrook** matter, Judge **Ann Butchart** found PCDC's insurance application contained **material misrepresentations**, rendering the policy **void ab initio** under **Pennsylvania law**, including:

• *Prudential Prop. & Cas. Ins. Co. v. Sartno*, 588 Pa. 205 (2006);

• *Aetna Cas. & Sur. Co. v. Ericksen*, 639 A.2d 34 (Pa. Super. 1994);

• *Evans v. Penn Mut. Life Ins. Co.*, 322 Pa. 547 (1936).

**86.** Despite this, PCDC was allowed to:

• maintain conservatorship;

• charge "costs";

• withhold accounting;

• close permits without inspection;

• claim "completion";

• and illegally transfer title.

**87.** The existence of void insurance in **both** conservatorships legally destroys PCDC's statutory authority and renders every step of both conservatorships ***ultra vires***, as discussed extensively in the Application for Reconsideration.

**C. The Role of Moto Design Shop, Montalbano, Estepani, Compass Real Estate, HLK, and OCF in Concealing or Benefitting From Fraudulent "Completion"**

**88. Moto Design Shop**, through **Adam Montalbano** and **Ben Estepani**, prepared architectural plans for PCDC (2017–2021). Their work was used to give the appearance of professional oversight and code compliance.

**89.** However, between 2021–2022, Moto produced a second set of plans for **OCF Realty**—plans that **mandated demolition and complete restructuring** of the same elements PCDC had sworn were "completed," including:

• framing;

• roofing;

• structural components;

• chimney assemblies;

• drainage;

• interior supports.

**90.** These contradictory plans prove:

(1) PCDC's work was not done, and

(2) PCDC and OCF jointly understood that "completion" was a fiction.

**91. Compass Real Estate** and agent **Hilary Lefkowitz-Karaman (HLK)** marketed the 325 Property **before judicial approval**, misrepresented structural conditions, concealed known hazards, and manipulated comparables to artificially support an insider transfer to **OCF**.

**92. OCF Holdings** and **OCF Realty** functioned as PCDC's preferred insider buyer, directing engineering and architectural plans, soliciting intervention in the 325 case, and seeking judicial enforcement of a **void Agreement of Sale**.

**93.** These coordinated acts were integral to the **Enterprise's pipeline**:

**seize → inflate invoices → claim completion → close permits → list to insiders → transfer.**

**D. Contractor Fraud and Financial Misconduct, Including the Central Role of Mangual Demolition**

**94. Mangual Demolition, Inc.** ("Mangual"), a long-time enterprise participant, engaged in a pattern of fraudulent, destructive, or non-existent work for PCDC across multiple Act 135 properties, including **325 S. 18th Street**, **5105 Overbrook**, and **1524 Ridge Avenue**.

**95.** At 325 S. 18th Street:

• Mangual billed **$14,650** (Invoice #1138, May 8, 2019) despite lacking licensure;

• PCDC issued **off-ledger payments**: $10,000 (9/15/19) and $4,650 (7/1/20) via checks signed by **David Champagne**;

• L&I had active **STOP WORK** notices and Mangual was "IN VIOLATION."

**96.** At the Overbrook Property:

• PCDC claimed ~**$70,000** in Mangual invoices;

• PCDC provided **no receipts**;

• All documentation violated **Act 135 §1106(d)**;

• Many invoices bore similarities to fabricated invoices found in other PCDC matters.

**97.** At **1524 Ridge Avenue**, PCDC conveyed the Act 135 property to Mangual and partner **Kevin Duggan**, confirming Mangual's dual role as **contractor and insider purchaser**.

**98. Mangual was repeatedly represented by Paul Toner and Michael McIlhinney** in other litigation (as shown in the uploaded files), confirming deep alignment and dual loyalty between PCDC's counsel and Mangual.

**99.** These facts demonstrate:

• systemic contractor fraud;

• preferential treatment by L&I;

• off-ledger financial transactions;

• breach of fiduciary obligations;

• pattern of racketeering activity.

**E. L&I's "Paper Close-Outs," Permit Fraud, and Municipal Custom Under Monell**

**100.** The City's Department of Licenses & Inspections ("L&I") maintained a

**longstanding custom** of:

• closing permits without site inspection;

• accepting fraudulent Bustamante certifications;

• ignoring visible violations;

• abandoning enforcement for favored Act 135 petitioners;

• imposing strict liability on disfavored owners like Plaintiffs.

**101.** These acts were consistent with public testimony given by **Rebecca Swanson**,

then L&I's Director of Policy, who acknowledged deep ties between L&I and

petitioners like PCDC.

**102.** L&I's custom directly resulted in:

• fraudulent approvals;

• concealment of dangerous conditions;

• deprivation of rights;

• escalation of damage at both properties;

• systematic violations of the Philadelphia Property Maintenance Code.

**103.** These practices constitute municipal customs under **Monell**, were applied discriminatorily, and were integral to the Enterprise's success.

## F. Judicial Misconduct and Denial of Access to Courts in the Court of Common Pleas

**104.** Judicial officers—acting in official capacities—enabled the enterprise by selectively denying Plaintiffs procedural rights while granting PCDC and OCF full access.

**105.** Between 2016–2025, **325 LLC's filings** (motions to terminate, motions to compel accounting, motions to challenge invoices, motions to inspect, fraud motions, jurisdiction motions) were **dismissed as moot, procedurally improper, or "no active docket"**, without hearings.

**106.** Meanwhile, **PCDC's and OCF's filings** were:

• docketed;

• accepted;

• scheduled for hearing;

• ruled upon—even years after the case was declared "final."

**107.** On July 14 & 25, 2022, transcripts show Judge Powell's:

• hostility toward Rufo;

• refusal to allow record development;

• incoherent rulings;

• contradictory statements;

• reliance on PCDC's counsel's representations, while ignoring evidence.[15]

**108.** Judge Anders' **Nov. 13, 2024**[16] decree labeling the 325 case "closed" was applied only to Plaintiffs—while PCDC and OCF filings were scheduled for a hearing more than three years after Judge Powell's October 7, 2022 "Final Order."

**109.** In Overbrook, Judge Butchart found **material misrepresentation** yet refused to apply the legal consequence—termination.

---

[15] See July 14, 2022 Hearing Tr. at 16 ("Johnny-come-lately" to 325 LLC's counsel, Kenneth D. Perkins, Esquire—a 40 year member of the Pennsylvania Bar in good standing); id. at 43 (referring to Mr. Toner as a "bright attorney" that would defeat any appeals brought by 325 LLC (indicating he would rule against 325 LLC even before evidence presented or submitted); id. at 56–60 (court cutting off argument; chastising colloquy); id. at 57, 93–94 ("disgrace" remarks concerning 325 LLC's counsel Olivia A. Adams); id. at 59 ("you've given this woman a million dollars… now it's going to be 1,800,000" and "recalcitrance"). See also July 25, 2022 Hearing Tr. at 69–70 (ordering sheriffs to escort Ms. Isabella; concluding proceedings).

[16] Judge Powell's October 7, 2022 order, Judge Anders's November 13, 2024 order, and all Philadelphia Court of Common Pleas orders issued **before and after** October 7, 2022— **including orders dismissing or refusing to process 325 LLC's filings that** *predated* **Powell's "finality" declaration**—and all orders enforcing a purported "closed docket" are collectively marked as **Exhibit "B"**, annexed hereto and incorporated by reference. Judge Powell's scheduling orders relating to (1) PCDC's September 22, 2025 "Motion to Terminate Agreement of Sale" (Walsh, Control No. 70-25094370) and (2) OCF's October 3, 2025 submission (Walsh, Control No. 55-25100655) are collectively marked as **Exhibit "C,"** also annexed and incorporated by reference.

## G. Commonwealth Court's Systemic Denial of Due Process and Equal Protection

**110.** The Pennsylvania Commonwealth Court engaged in a pattern of procedural and substantive due-process violations in 325 LLC's appeals (268 C.D. 2019; 11 & 12 C.D. 2021; 577 C.D. 2022; 47 & 48 C.D. 2022), including:

### 1. Refusal to Apply Rules of Appellate Procedure (Pa.R.A.P. 1931, 1935, 1925(a))

**111.** The trial court repeatedly violated **Pa.R.A.P. 1925(a)** by refusing to issue opinions, delaying orders, and failing to address preserved issues.

**112.** The Commonwealth Court refused to enforce **Pa.R.A.P. 1931**[17] (record transmission) and **Pa.R.A.P. 1935** (complete record requirement), instead affirming without ensuring that the record included:

• photos,

• engineering contradictions,

---

[17]The Commonwealth Court previously issued **Pa.R.A.P. 1935(b)** Notices to Judge Kenneth J. Powell on **August 21, 2018** and **February 21, 2020**, directing him to file opinions overdue under Pa.R.A.P. 1925(a). *See* Pa.R.A.P. 1935 Notices (Aug. 21, 2018 & Feb. 21, 2020) (attached as Collective **Exhibit "D"**). Despite these earlier compliance failures, during the later consolidated appeals—**577 C.D. 2022; 624 C.D. 2022; 1235 C.D. 2022; 76 C.D. 2023; and 1166 C.D. 2022**—the Commonwealth Court *did not issue any additional 1935 Notices*, even when Judge Powell again failed to file timely or accurate opinions. Instead, the Commonwealth Court's docket reflects an "**Application for Relief—Trial Court Opinion Received**" notation on **April 26, 2023**, even though the Philadelphia docket shows **no transmission** of any record or opinion on that date. *See* **577 C.D. 2022 Application for Relief Record** at pp. 1–4 (showing Commonwealth Court docket entries claiming receipt of trial court opinions) contrasted with PCCP Docket for May Term 2016, No. 04133 (showing no such transmission on April 26, 2023). The discrepancy confirms that the Commonwealth Court accepted a <u>non-compliant record</u> and proceeded *without requiring* adherence to **Pa.R.A.P. 1931(a), (d), & (f)**.

• invoices,

• L&I violations,

• transcripts,

• motions raising fraud.

**113.** By refusing to compel a complete record, the Court deprived Plaintiffs of

meaningful appellate review.

## 2. Fabricating Waiver Contrary to the Record

**114.** The June 13, 2025 Memorandum falsely claimed Plaintiffs did not raise Act

135 §1106(c)(4) issues—despite extensive briefing, photos, engineering evidence,

and statutory arguments.[18]

## 3. Ignoring Undisputed Evidence and Mischaracterizing Facts

**115.** The Court described Plaintiffs' evidence as "bald assertions," despite the

record containing:

• drone footage;

---

[18] The Commonwealth Court's June 13, 2025 Memorandum inaccurately asserted "waiver," despite the certified record showing that 325 LLC repeatedly and explicitly raised Act 135 §1106(c)(4) non-compliance. The Application for Reconsideration cites numerous record entries—including **R. 2605a–2608a, 2624a–2625a, 2629a–2632a** (detailing Final Plan defects, photos, drone evidence, and code violations) and **R. 2666a–2669a, 2670a–2671a, 2679a–2682a** (Fifth Motion to Terminate)—demonstrating that statutory violations were preserved, briefed, and supported with exhibits. The record further includes photographic evidence at **R. 2625a, 2630a, 2632a** showing incomplete, unsafe work. **No fair reading of the certified record supports a finding of waiver.** The Pennsylvania Supreme Court's refusal to review the issue leaves these constitutional violations without a state remedy, triggering federal due-process protections under *Logan v. Zimmerman Brush*, 455 U.S. 422 (1982), and the systemic-breakdown doctrine of *Great Western Mining*, 615 F.3d 159 (3d Cir. 2010).

• exhibits;

• engineering disputes and conflicts (from PCDC's own engineer (Bustamante));

• code-violation evidence; See code violations and Unsafe Notices dated October 31, 2022, **November 4, 2022** (CF-2022-111012), March 6, 2023 , and violations issued after Judge Powell's October 7, 2022, "Final Order" categorically refuting PCDC's remediation completion claims collectively marked **Exhibit "H,"** annexed and fully incorporated by this reference.

• photographs;

• invoice analyses.

## 4. Denying Meaningful Review Through Results-Oriented Analysis

**116.** The Court:

• failed to apply mandatory statutory language;

• failed to address void insurance;

• failed to address fraudulent engineering;

• failed to review dangerous conditions;

• failed to address the trial court's refusal to hold hearings.

**5. Compounding Trial-Level Due Process Violations**

**117.** Where the trial court refused to hear termination motions, the Commonwealth

Court:

• upheld the denials as "moot";

• invoked waiver based on the trial court's own failures;

• insulated the fraud by refusing to review evidence.

**118.** This constitutes an **independent due-process violation** under *Logan v.*

*Zimmerman Brush*, 455 U.S. 422 (1982).

**H. Continuing Violations and Accrual**

**119.** The violations remain ongoing due to:

• the recorded ultra vires Overbrook deed;

• the "closed docket" barrier;

• L&I's continuing refusal to correct violations;

• PCDC's continued claims of conservatorship costs;

• ongoing dangerous conditions at 325;

• destruction of appellate rights.

**120.** These facts support application of the **continuing-violations doctrine**,

equitable tolling, and federal jurisdiction.

**I. PCDC's Fabricated "Final Plans," Void-Ab-Initio Insurance, and the Pattern of False Completion (325 & Overbrook)**

**121.** A central feature of the Act 135 Enterprise was the submission of **fraudulent "Final Plans"** declaring work "complete" when, in fact, the properties remained in dangerous, code-deficient, and structurally jeopardized condition.

**122.** Under **Act 135 §1106(c)**, a Final Plan must include:

• a verified accounting;

• proof of payment for every invoice;

• documentation of all work performed;

• compliance with every applicable code provision;

• certification from licensed professionals;

• and restoration of the property to safe condition.

**123.** PCDC complied with **none** of these statutory mandates in either property.

**1. Fraudulent "Final Plan" at 325 S. 18th Street**

**124.** PCDC's "Final Plan" for the 325 Property included invoices, estimates, and engineering certifications that were:

• inconsistent with the condition of the property;

• internally contradictory;

• unsupported by receipts;

• inconsistent with L&I records;

• inconsistent with drone footage;

• inconsistent with Moto's revised architectural plans;

• inconsistent with OCF's structural analysis requiring demolition.[19]

**125.** Despite claiming completion of work (from September 2020-July 14, 2022)[20]

on:

• roofing;

• drainage;

• party wall stabilization;

• dormers;

• chimneys;

---

[19] Moto Design Shop's architectural plans for OCF—prepared by architect **Ben Estepani**, who simultaneously worked on PCDC's purported "remediation" of 325 S. 18th Street (from 2017-2020) as an employee of Adam Montalbano's Moto Design Shop—show redevelopment requiring **significant demolition**, not completed repairs, directly contradicting PCDC's engineering certifications of code compliance (Estepani Plans, 22 pp.). The conflict is compounded by OCF's zoning filing: in **Zoning Appeal No. ZP-2022-007476**, OCF (through Estepani) affirmatively represented itself as the **"owner"** of 325 S. 18th Street even though (1) PCDC lacked lawful authority to sell the property; (2) **325 LLC was—and remained—the sole legal owner**; and (3) the Act 135 action was still being litigated. These zoning and PHC filings expose the "Feibush Factor": as PCDC certified the property as "rehabilitated," OCF's architect—who also worked on PCDC's remediation team—was simultaneously drafting demolition-based redevelopment plans premised on ownership OCF did not (and could not) possess. OCF's own public promotion of the project (e.g., *Naked Philly* article) further corroborates this coordinated insider acquisition effort.

[20] PCDC repeatedly represented that all work at 325 S. 18th Street was "**complete**" and "**code-approved**." At the **March 19, 2021 hearing**, counsel stated: "*All work was completed… final inspection took place and permits were closed out*" (3/19/21 Tr. **7**:13–20; 8:3–9; 9:1–8). PCDC reiterated the same at the **July 14, 2022 hearing**, again asserting "*the work is complete*" and "*final inspections were done*" (7/14/22 Tr. 24–25; 41–42; 170–176). These sworn assurances are directly contradicted by L&I correspondence (no inspections), drone evidence (persistent structural hazards), and OCF/Moto demolition-based plans.

• façade;

• interior safety support[21]

Philadelphia Property Maintenance Code infractions evidenced by L&I violations, and drone shots, between 2023–2025 established that:

• chimneys remained uncapped and unstable;

• the party wall separated several inches;

• drainage was missing;

• capping was incomplete;

• holes existed in the roof;

• cornice brick was loose;

• dormer wood was rotted through;

• water infiltration was severe;

• the façade was de-bonding and absorbing water.[22]

---

[21] Additionally, PCDC claimed that "all work was completed" at the 325 Property based on engineering certifications and L&I "approvals." These assertions appear throughout the transcript of the **July 14, 2022 hearing**: David Champagne testified that PCDC "completed all of the work" and that "L&I approved and closed the permits" (July 14, 2022 Tr. at 63–76); engineer Gregory Bustamante certified that "everything was completed," "no structural hazards remained," and "L&I accepted our certifications" (id. at 89–109); and counsel Paul Toner repeatedly asserted that "the work is complete," "L&I signed off," and that "every line item in the Final Plan has been completed" (id. at 111–133).

[22] October 2020 drone footage and interior photographs posted by PCDC's listing agent, Hilary Lefkowitz-Karaman (**Exhibit "E"**), together with November 2025 drone footage (**Exhibit "F"**), irrefutably demonstrate that PCDC's contractors billed for work that was never performed and that PCDC submitted materially padded or fabricated invoices. See also March 19, 2021, Transcript, pp. 35–39 (PCDC's counsel conceding that the photographs accurately depict the property's condition after PCDC's purported "completed" Act 135 remediation).

**126.** These conditions are **incompatible** with any assertion of code compliance under the Philadelphia Property Maintenance Code.

## 2. Fraudulent "Final Plan" at 5105 Overbrook Avenue

**127.** In the Overbrook matter, PCDC presented only **$4,000 in receipts**, all paid by **third parties**—while claiming **over $200,000** in conservatorship costs.

**128.** Judge Butchart found that PCDC submitted an insurance application containing **material misrepresentations**,[23] voiding the policy *ab initio*.

**129.** Despite this binding finding, and despite Act 135's strict insurance requirement, Judge Butchart approved PCDC's "Final Plan" with:

• no receipts for over $200,000 in claimed expenditures;

• no evidence of payment;

• fraudulent invoices (including Mangual);

• no code-compliance documentation;

• no contractor identification;

• incomplete, unsafe, and destructive work.[24]

---

[23] Judge Butchart's June 25, 2024, order finding that PCDC made material misrepresentations (later rephrased as "material misstatements") on PCDC's insurance application vis-à-vis 5505 Overbrook Avenue. Judge Butchart's orders are collectively marked **Exhibit "G,"** annexed and fully incorporated herein by this reference.

[24] The record demonstrates starkly inconsistent judicial treatment of property owners. In the 325 S. 18th Street matter, PCDC's counsel **Paul Toner** successfully argued that 325 LLC must produce **detailed financial proof** of every expenditure—"canceled checks, wire transfers, credit card receipts, contractor documentation, everything"—and Judge Powell **ordered full documentation** (March 19, 2021 Hr'g Tr. 45–55). Yet in the 5105 Overbrook case, when the owner (Fassett) invoked **judicial estoppel** to require PCDC to produce equivalent proof of its

**130.** Judge Butchart's refusal to apply the legal consequence of void insurance is itself a constitutional violation and a key component of Plaintiffs' *Ex parte Young* claims.

### J. The Agreement of Sale Fraud: PCDC, OCF, Compass, HLK, Moto Design, & Judicial Actors

**131.** PCDC executed an **Agreement of Sale ("AOS")** with OCF Realty/OCF Holdings—**while litigation was active and without title authority**,[25] using equity stripped from 325 LLC through fraudulent work, void insurance, and permit closures.

---

claimed **$200,000+** expenditures, PCDC produced only **four receipts totaling roughly $4,000**, none paid by PCDC, and **no canceled checks, wire confirmations, or bank records**, despite having repeatedly represented that such payments had been made (May 17, 2024 Hr'g Tr. pp. –). Judge Butchart acknowledged this absence of documentation yet **approved PCDC's Final Plan** anyway, awarding proceeds based on invoices unsupported by any proof of payment. This disparate treatment underscores the pattern of selective enforcement, arbitrary process, and fraud threaded throughout both conservatorships.

[25] The Commonwealth Court expressly held that 325 LLC's rights would be protected at the *post-remediation hearing*, emphasizing that the property **"would not be approved for sale"** until PCDC presented a **full accounting**, and that PCDC could not be reimbursed for **"any nonconforming work or unsubstantiated costs."** *Walsh v. Isabella*, Nos. 1689 & 1781 C.D. 2019, slip op. at 10–11 (Pa. Cmwlth. June 23, 2021) (trial court would "review the work performed," the conservator must present a "final accounting," and PCDC would not recover for "nonconforming work or unsubstantiated costs"). Despite this binding framework, Judge Powell—*before any hearing, before any accounting, and without requiring code-compliance proof*—authorized PCDC to **list the property for sale** (orders dated March 19, 2021 and March 30, 2021), and PCDC thereafter executed a **December 2021 Agreement of Sale** with OCF Realty/OCF Holdings when: (1) PCDC had no lawful title; (2) PCDC had not satisfied mandatory Act 135 accounting requirements; (3) litigation was active; and (4) 325 LLC remained the only legal owner. The Commonwealth Court's own assurances were thus abandoned, enabling the very fraud the appellate court said Act 135 procedures were meant to prevent.

**132.** The AOS was:

• executed while PCDC had no lawful authority;

• executed in violation of Act 135's mandatory accounting prerequisites under Act 135 §1106(d);

• based entirely on fraudulent engineering reports;

• contrary to evidence that PCDC's work was incomplete;

• executed while the conservatorship was statutorily void.

**133.** Compass Real Estate and agent **Hilary Lefkowitz-Karaman (HLK)** marketed the property using:

• misrepresentations;

• concealment of structural defects;

• concealed engineering contradictions;

• a listing price set to benefit OCF;

• marketing materials inconsistent with known conditions.

**134.** Moto Design Shop's former engineer Ben Estepani (hired by Ori Feibush in or around December 2021) prepared architectural plans that revealed demolition conditions requiring complete structural overhaul—proving PCDC's "completion" claims were fraudulent.

**135.** These coordinated real-estate maneuvers constitute RICO predicate acts (wire fraud, mail fraud, receipt of property derived from racketeering, interstate facilities in aid of fraud).

**K. Judicial Manipulation of Dockets, "Dual-Track" Access to Courts, and Procedural Discrimination**

**136.** From 2018 through 2025, the Philadelphia Court of Common Pleas maintained a **dual-track system** for Act 135 conservatorships:

**For PCDC and OCF** (as of October 3, 2025)**:**

• motions docketed;

• hearings scheduled;

• oral argument held;

• orders granted—*even post-finality*;

• recourse available upon request.

**For 325 LLC and Fassett:**

• filings rejected or denied;

• filings dismissed as "moot";

• filings marked "closed case";

• filings marked "procedurally improper";

• no hearings (or, no substantiation of funds by PCDC for invoices presented in Fassett; no inspection for 325 LLC, while PCDC was granted inspection via order dated November 16, 2016);

• no judicial review;

• no access to statutory rights.

**137.** These disparities were deliberate, systematic, and enabled by the judicial

officers named in this Complaint.

## L. Judicial Misconduct by Judge Powell (325 Property)

**138.** Judge Powell's misconduct included:

• declaring the case "final" despite no final order under Pa.R.A.P. 341;

• refusing to hear termination motions and categorically denying 325 LLC's

Motion to Inspect (see, Walsh, Tr. Ct. Order dated September 7, 2021 and see

*Walsh* December 20, 2021, "Status Hearing" Tr., 5-45, special emphasis on pp. 25,

27-28 and ;

• refusing to properly consider 325 LLC's filings;

• denying all 325 LLC filings as moot or (prior to the October 7, 2022, "final

order") denying without reading;

• failing to issue required opinions under Pa.R.A.P. 1925 thereby severely

protracting appellate process and delaying appellate review;

• refusing to transmit the record under Pa.R.A.P. 1931;

• ignoring Act 135's mandatory provisions and requirements;

• scheduling hearings only for PCDC/OCF.

**139.** At the July 14 and July 25, 2022 hearings, transcripts reveal:

• hostility toward Plaintiff Rufo and his counsel;

• inability to articulate rulings;

• contradictory statements;

• inconsistent application of legal doctrine;

• deference to PCDC's counsel while testifying at trumped up disciplinary

proceedings against 325 LLC's lawyer; [26]

• refusal to permit evidentiary records;

• hostility toward requests for statutory rights.

**140.** Powell's inconsistent and contradictory handling of jurisdiction directly

caused the Commonwealth Court (due to the deference afforded trial court judges)

to misinterpret the record, forming part of the subsequent appellate deprivation.

---

[26] The disciplinary case rested almost entirely on testimony from Judges Powell and Fox (who filed an August 4, 2022, disciplinary complaint) and Attorney Paul Toner—each of whom made materially false statements under oath. As detailed in the Introduction to Respondent Adams' Exceptions Brief (Mar. 26, 2025), Judge Powell falsely denied: **(1)** being "very sick" during hearings, though he repeatedly stated on the record that he had recently been hospitalized and unable to walk down courtroom stairs; **(2)** participating in the **August 22, 2018 ex parte meeting** with Adams and Toner; **(3)** displaying hostility, confusion, and erratic conduct at the July 14, 2022 hearing, despite the transcript's contrary documentation; **(4)** relying on Toner's representations and proposed orders; and **(5)** making statements that appear verbatim in the transcript, including acknowledging that Rufo "paid a million dollars" and calling him a "renowned builder." These sworn misrepresentations underscore the systemic judicial bias and procedural breakdown central to Plaintiffs' federal claims.

## M. Judicial Misconduct by Judge Fox (325 Property)[27]

**141.** During 2024 disciplinary proceedings, Judge Fox admitted:

• that Act 135 involves a "tremendous amount of unwritten procedure,"

• that she provided **no guidance** to Judge Powell when assigning the case,

• that she continued to issue orders after claiming to have "withdrawn,"

• that she denied bench-recusal motions in a matter where she claimed no involvement.

**142.** Judge Fox's supervisory failures and continued interventions contributed to:

• discriminatory enforcement of mootness;

• refusal to process 325 LLC filings;

• acceptance of PCDC filings;

• the creation of a "closed case" barrier used to defeat appeals.

---

[27] As documented in Respondent Adams' Exceptions Brief (Mar. 26, 2025), Judges **Fox** and **Butchart** both participated in Act 135 Continuing Legal Education (CLE) programs alongside PCDC's counsel Paul Toner, Esquire, and Michael McIlhinney, Esquire (formerly OTLLP, now Toner Law Group, PLLC)—a fact never disclosed to litigants. Judge Fox testified that Act 135 involves a *"tremendous amount of unwritten procedure"* yet admitted that she assigned the Walsh/325 LLC matter to Judge Powell on April 5, 2018 without giving Judge Powell any instructions on that unwritten procedure (Exceptions Brief, pp. 6–7). Judge Fox further required three separate questions before identifying the June 3, 2018 CLE co-sponsor she attended with Toner and McIlhinney (Exceptions Brief, p. 7, citing Nov. 14, 2024 Hearing Transcript, pp. 139–143). These undisclosed collaborations, occurring simultaneously with active Act 135 litigation, underscore the structural conflicts and systemic procedural bias at issue.

**N. Judicial Misconduct by Judge Anders (325 Property)**

**143.** On **November 13, 2024**, Judge Anders issued an order stating:

• "this is a closed case,"

• "no active docket exists."

**144.** This administrative directive was applied **only to 325 LLC**—not to PCDC or OCF.

**145.** After labeling the matter "closed," the Court nonetheless:

• accepted PCDC's Sept. 22, 2025 motion;

• accepted OCF's Oct. 3, 2025 motion;

• scheduled an unprecedented **eight-hour oral argument** in 2025.

**146.** By contrast, every 325 LLC motion filed since 2022 was denied on the ground that "no active docket" existed.

**147.** This selective enforcement of jurisdictional doctrine constitutes:

• equal-protection violations;

• due-process violations;

• denial-of-access violations;

• unconstitutional judicial discrimination.

**O. Judicial Misconduct by Judge Butchart (Overbrook Property)**

**148.** Judge Butchart made a legally binding finding that PCDC submitted *materially false insurance applications*—voiding coverage ***ab initio***.

**149.** Despite this, Judge Butchart:

• refused to terminate the conservatorship;

• refused to declare invoices void;

• refused to return the property;

• approved a sale based on fraudulent filings;

• approved a Final Plan without receipts;

• approved distribution of sale proceeds to PCDC.

**150.** These acts facilitated the enterprise's unlawful conversion of the Overbrook Property and constitute actionable violations of procedural and substantive due process.

**P. The Commonwealth Court's Independent Constitutional Violations**

**151.** The Pennsylvania Commonwealth Court committed **independent constitutional violations** by refusing meaningful review and issuing opinions unsupported by the record in the 325 LLC appeals (268 C.D. 2019; 11 & 12 C.D. 2021; 577 C.D. 2022; 47 & 48 C.D. 2022).

**152.** These violations include:

## 1. Misapplication of Mootness Doctrine

**153.** The Court repeatedly held that 325 LLC's appeals were "moot" because the conservatorship was "complete," despite:

• no statutory completion under §1106(c)(4);

• no accounting;

• no proof of payment;

• no code compliance;

• no final order;

• no judicial fact-finding.

## 2. Misapplication of Waiver Doctrine

**154.** The Court fabricated waiver by asserting 325 LLC "did not preserve" statutory arguments—even though:

• 325 LLC's briefs preserved them;

• transcripts preserved them;

• the docket preserved them;

• the Application for Reconsideration cited them with specificity.

## 3. Failure to Enforce Pa.R.A.P. 1931 & 1935 (Record)

**155.** The Court affirmed without:

• photographs;

• engineering reports;

• transcripts;

• motions;

• safety evidence;

• L&I correspondence;

• drone footage.

These omissions were raised in the Reconsideration Application—ignored entirely.

## 4. Factually Unsupported Assertions in Opinions

**156.** The Memorandum Opinions claimed:

• "no record evidence" existed of shoddy work,

• "bald assertions" were made,

• "completion" was uncontested.

These statements were false and contradicted by:

• all uploaded exhibits;

• the 2023–2025 drone series;

• Moto's contradictory plans;

• PCDC's fraudulent engineering;

• the record.

### 5. Independent Denial of Due Process Under *Logan v. Zimmerman Brush*

**157.** By refusing to review the merits of statutory claims due to the trial court's own procedural failures, the Commonwealth Court violated:

• procedural due process;

• equal protection;

• access-to-courts doctrine.

### 6. State-Created Appellate Danger

**158.** The Court's refusal to enforce statutory rights allowed PCDC's fraud, L&I's non-enforcement, and judicial discrimination to continue unchecked, causing ongoing harm.

### 7. Failure to Correct Record Misconduct Under Its Supervisory Power

**159.** The Court has supervisory authority to correct:

• incomplete records;

• trial court failures under Pa.R.A.P. 1925 and 1931;

• jurisdictional errors;

• fabricated findings.

It exercised **none** of these powers.

**8. Cumulative Constitutional Violations**

**160.** Collectively, these appellate failures constitute:

• due-process violations;

• equal-protection violations;

• violations of the Pennsylvania Constitution;

• actionable misconduct under 42 U.S.C. §1983;

• violations that restart the limitations period under the continuing-violations

doctrine.

**Q. Substantive Due Process Violations — Arbitrary, Irrational, and Conscience-Shocking Conduct**

**161.** The combined actions of PCDC, Toner Law Group, OTLLP, L&I, and judicial officers (acting in their **official capacities**) constituted **arbitrary and conscience-shocking conduct** in violation of the Fourteenth Amendment's substantive due process protections.

**162.** Substantive due process prohibits government actors from engaging in conduct that is **"arbitrary," "irrational," "without legitimate governmental purpose,"** or that **shocks the conscience**.

The conduct described herein meets and exceeds this standard.

## 1. Operating a Conservatorship Without Valid Insurance

**163.** In both the 325 and Overbrook matters, PCDC operated **without legally required insurance** due to **material misrepresentations** that rendered its policies *void ab initio*.

**164.** Insurance is a **non-negotiable statutory prerequisite** under Act 135 §1106(a)(9). No conservator can legally enter or perform work without valid insurance.

**165.** Judicial refusal to apply this rule—despite explicit findings of fraud—constituted a profound departure from law and basic reason.

## 2. Judicial Tolerance of Fraud and Permit Manipulation

**166.** Judicial officers allowed PCDC to:

• file fraudulent engineering reports;

• close permits without inspection;

• submit unverifiable invoices;

• avoid Act 135's accounting requirements;

• sell property without authority.

**167.** Government actors who knowingly allow unlawful and destructive conduct that strips owners of property rights engage in **arbitrary government action prohibited by substantive due process**.

### 3. State-Created Danger

**168.** L&I's conduct affirmatively increased the danger to Plaintiffs' properties by permitting:

• uncapped chimneys,

• unstable masonry,

• water penetration,

• deteriorated walls and dormers,

• hazardous structural conditions,

• and incomplete demolition to remain uncorrected.

**169.** These defects were foreseeable, specific, and made worse by the City's actions.

**170.** The "state-created danger" doctrine applies because:

• municipal actors knowingly increased the risk;

• the danger was directed at Plaintiffs;

• the conduct was deliberate;

• Plaintiffs suffered harm as a direct result.

### 4. Judicial Manipulation of Mootness and Closed-Docket Doctrines

**171.** Judicial actors arbitrarily applied "closed docket," "mootness," and "finality" doctrines against 325 LLC—but **only** against 325 LLC.

**172.** The same courts simultaneously allowed:

• PCDC filings;

• OCF filings;

• insider-sale motions;

• hearings and oral argument;

• judicial approvals.

**173.** Selective enforcement of procedural doctrines is a classic violation of substantive due process.

## 5. Destruction of Property Through Statutory Abuse

**174.** Under PCDC's unlawful conservatorship, both properties suffered dramatic deterioration:

**At 325 S. 18th Street:**

• fractures and separation of party walls,

• uncapped chimneys collapsing inward,

• water penetration causing structural rot,

• deterioration of cornice brick,

• rotted dormers,

• missing drainage and flashing,

• holes in the roof,

• façade separation and spalling.

**At 5105 Overbrook Avenue:**

• unpermitted demolition,

• removal of structural supports,

• open framing exposed to weather,

• water infiltration,

• destruction and abandonment of essential components.

**175.** These injuries were **created by PCDC**—not pre-existing.

**R. Evidence Revealing Fraudulent Construction and Concealment (2022–2025)**

**176.** Between 2022 and 2025, Plaintiffs obtained evidence demonstrating that

PCDC's representations about "completed work" were fraudulent:

**Drone Footage (2023–2025):**

• documented severe deterioration,

• contradicting PCDC's "completion" claims,

• exposing false engineering certifications.

**Moto Design Shop Architectural Plans:**

**177.** Moto's plans—prepared for OCF—recommended:

• demolition of substantial structural elements;

• removal of PCDC's work;

• rebuilding core systems;

• replacing roofing, masonry, drainage, and framing.

**178.** This evidence conclusively establishes that PCDC's certifications of "completion" were known to be fraudulent.

**S. Mangual Demolition's Fraudulent Invoicing and Destructive Work**

**179.** Mangual was deeply embedded in the enterprise's fraudulent billing scheme, evidenced by:

• invoices submitted for work never performed,

• invoices lacking contractual backup,

• invoices contradicting permit records,

• demolition work exceeding permitted scope,

• improper removal of structural components,

• debris abandoned for months,

• unpermitted activity requiring inspection.

**180.** Mangual's invoices appear in both properties and also in unrelated Act 135 cases (e.g., **1516–18 N. Marston St.**, attached in the Mangual files), revealing a **pattern**.

**181.** Mangual's invoices were used to inflate "conservatorship costs," enabling PCDC and Toner Law Group to argue that Plaintiffs lacked sufficient equity to redeem their property, thereby facilitating insider transfers.

**182.** This constitutes **mail fraud, wire fraud, and receipt of racketeering-derived property**.

## T. OCF's Insider Role, Fraudulent Inducement, and Integrated Real-Estate Scheme

**183.** OCF Holdings, acting through OCF Realty, knowingly entered into an Agreement of Sale with PCDC based on:

• fraudulent engineering reports,

• false statements of code compliance,

• incomplete and unsafe conditions,

• concealment of structural hazards.

**184.** OCF's internal representations and architectural plans (Moto Design Shop) contradict the representations made to the court—that PCDC's work was "complete."

**185.** OCF sought to secure a prime Rittenhouse property at a fraction of its value through a corrupted Act 135 process and coordination with PCDC, Compass, and HLK.

## U. Compass Real Estate & Hilary Lefkowitz-Karaman's Marketing Fraud

**186.** Compass and HLK knowingly marketed properties:

• with concealed structural damage,

• without disclosing safety violations,

• using fraudulent engineering certifications,

• based on illegally executed agreements of sale.

**187.** MLS listings omitted:

• uncapped chimneys,

• roof holes,

• structural instability,

• failing party walls,

• rotted dormers,

• non-compliant drainage,

• incomplete demolition.

**188.** The concealment of material defects constitutes:

• real estate fraud under Pennsylvania law,

• RICO mail and wire fraud,

• knowing participation in the Act 135 enterprise.

**V. Judicial Tolerance of Fraud Enabled the Enterprise's Continuity**

**189.** Judicial officers acted as indispensable facilitators—again, **in official capacity only**—by:

• adopting PCDC's proposed orders,

• refusing to enforce statutory prerequisites,

• refusing to enforce void-ab-initio insurance law,

• denying all Plaintiffs' filings as moot,

• refusing to docket filings,

• refusing to issue Pa.R.A.P. 1925 opinions,

• refusing to transmit the record,

• scheduling hearings solely for PCDC and OCF.

**190.** The judicial machinery thus became a **mechanism through which the enterprise operated**, eliminating oversight and enabling the destruction and seizure of Plaintiffs' property.

## W. The Continuing Violation Doctrine Applies

**191.** The constitutional violations described herein continued through:

• ongoing denial of filings,

• refusal to docket motions,

• ongoing permit fraud,

• ongoing unsafe conditions,

• ongoing cloud on title,

• ongoing deprivation of access to the property,

• ongoing enforcement of void orders,

• ongoing attempts by OCF and PCDC to enforce insider-sale rights.

**192.** Each act is part of a continuous pattern, restarting the statute of limitations.

## X. Plaintiffs Suffered Extreme Harm

**193.** As a direct and foreseeable result of Defendants' actions, Plaintiffs suffered:

• loss of property;

• loss of equity;

• loss of use and control;

• structural destruction;

• loss of redemption rights;

• slander of title;

• unconstitutional and uncompensated taking;

• denial of due process;

• denial of equal protection;

• violation of procedural rights under Pennsylvania law;

• severe financial loss;

• emotional and reputational harm.

## Y. Plaintiffs' Injuries Continue to This Day

**194.** As of 2025, Plaintiffs remain:

• barred from filings,

• barred from access to their property,

• subjected to hazards caused by PCDC,

• denied due process,

• deprived of constitutional rights,

• subjected to ongoing clouded title,

• exposed to Act 135 §1107(b) liability,

• damaged by continuing municipal neglect.

## Z. Defendants Acted Under Color of State Law

**195.** PCDC acted under color of state law through:

• court orders;

• delegated statutory authority;

• coordination with L&I;

• use of judicial powers;

• municipal cooperation.

**196.** Judicial officers acted in **official capacity**, enabling §1983 prospective injunctive relief under **Ex parte Young**.

**197.** Municipal actors acted under Monell liability, enforcing discriminatory customs and practices.

## AA. The Act 135 Enterprise — Continuing Association-in-Fact

**198.** The enterprise remained operational from at least 2014 through the present, maintaining continuity through:

• dissolution of OTLLP;

• formation of Toner Law Group;

• continued PCDC filings;

• continued L&I non-enforcement;

• continued judicial manipulation;

• continued insider sales.

## BB. Proximate Causation

**199.** Defendants' conduct was the **direct, foreseeable, and proximate cause** of Plaintiffs' injuries.

**200.** But for Defendants' actions:

• the property would not have been seized;

• invoices would not have been inflated;

• permits would not have been closed;

• the property would not have deteriorated;

• title would not have been transferred;

• Plaintiffs would not have suffered takings;

• Plaintiffs would not have suffered ongoing constitutional harms.

## CC. Summary of Arbitrary and Conscience-Shocking Conduct

**201.** The government's conduct—through judicial machinery, L&I enforcement, and municipal cooperation—was irrational, unlawful, and conscience-shocking.

**202.** No legitimate governmental purpose exists for any of the discriminatory, fraudulent, destructive, or procedurally abusive acts described herein.

**DD. These Facts Support All Federal Claims**

**203.** The facts above support:

• Takings Clause (Fifth Amendment),

• Procedural Due Process,

• Substantive Due Process,

• Equal Protection,

• §1983 liability,

• §1985(3) conspiracy,

• RICO §§1962(c),(d),

• Monell liability,

• Quiet title,

• Civil conspiracy,

• Conversion,

• Fraud,

• Abuse of process.

**EE. Ongoing Threat Requiring Injunctive Relief**

**204.** Because the unlawful conduct persists, Plaintiffs seek prospective federal

relief including:

• injunctions;

• declaratory judgments;

• mandamus-level relief;

• RICO damages.

## FF. Conclusion of Section V Part 3

**205.** The foregoing facts *are incorporated into every subsequent Count*.

## GG. The Judicial Machinery's Administrative and Procedural Violations Systemically Denied Plaintiffs All Avenues of Review

### 1. Repeated Failure to Issue Required Pa.R.A.P. 1925(a) Opinions

**221.** Beginning in 2018 and continuing through 2025, Judge Powell repeatedly failed or refused to issue required Pa.R.A.P. 1925(a) opinions after Plaintiffs filed multiple appeals relating to:

• denial of termination motions under Act 135,

• refusal to enforce the mandatory final-plan hearing,

• refusal to compel accounting under §1106(d),

• refusal to apply void-ab-initio insurance law,

• unexplained approval of invoices,

• erroneous "finality" rulings,

• docket-closure designations inconsistent with Pennsylvania law.

**222.** Pa.R.A.P. 1925(a) is mandatory; failure to issue an opinion deprives appellants of meaningful review and constitutes a structural due process violation under Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).

**223.** Powell's failures triggered multiple Pa.R.A.P. 1935(a) "Notice of Non-

Compliance" filings from the Commonwealth Court—an extraordinary measure indicating the trial court's systemic refusal to transmit required opinions.

**224.** Despite these mandatory notices, Powell still refused to issue opinions, frustrating appellate review and ensuring Plaintiffs remained trapped without recourse.

## 2. Repeated Violations of Pa.R.A.P. 1931 — Failure to Transmit the Record

**225.** The Commonwealth Court repeatedly notified counsel that the trial court had not transmitted the certified record as required by Pa.R.A.P. 1931, which mandates transmission within 10 days after receipt of the notice of appeal.

**226.** The trial court delayed transmission for months and, at times, years, preventing meaningful review of nearly every appeal brought by 325 LLC.

**227.** This conduct created a recurring procedural trap: Plaintiffs' appeals languished for years, then were dismissed or quashed on invented procedural grounds.

## 3. Quashing Appeals Contrary to Law and the Record

**228.** The Commonwealth Court repeatedly quashed 325 LLC's appeals— particularly in:

• 11 C.D. 2019,

• 12 C.D. 2019,

• 268 C.D. 2019,

• 1689 C.D. 2019,

• 1781 C.D. 2019,

• 577 C.D. 2022,

• 47 & 48 C.D. 2022,

• 1352 C.D. 2024,

even when the underlying orders were plainly not final under Pa.R.A.P. 341 or were appealable under 311(a)(2) or 311(a)(4).

**229.** In each of these matters, appellate courts refused to consider whether:

• the October 7, 2022 order was not a "final order" under controlling precedent;

• Act 135 requires hearings before approval of a final plan;

• a conservator operating under void insurance has no authority;

• Plaintiffs' evidence was supported by the record;

• the record included photographs, invoices, drone footage, and statutory violations;

• the trial court's findings lacked evidentiary support.

**230.** The Application for Reconsideration filed June 13, 2025, shows that the Commonwealth Court:

• openly refused to acknowledge that 325 LLC raised safety and structural issues;

• treated verified factual assertions as "unpreserved" despite being in multiple filings, transcripts, and exhibits;

• relied on procedural rationales invented by the trial court;

• ignored its own precedent and Pa.R.A.P. obligations.

**231.** This appellate conduct constitutes a separate procedural due process violation under Logan and the "systemic breakdown" doctrine recognized in *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010).

## 4. Commonwealth Court's Inconsistent Application of Appellate Rules

**232.** In the same docket, the Commonwealth Court applied procedural rules to Plaintiffs but refused to apply identical rules to PCDC or Toner Law Group filings.

**233.** For example:

• Appeals involving PCDC were accepted despite similar defects;

• PCDC's motions were heard on the merits;

• 325 LLC's filings were rejected as "moot," "unpreserved," or "procedurally improper";

• The Court ignored its obligation under Pa.R.A.P. 105 to construe rules liberally "to secure the just, speedy and inexpensive determination of every matter."

**234.** The disparity was so extreme that it constitutes selective denial of appellate access, violating equal protection and procedural due process.

## 5. The Kings Bench Petition Highlights Systemic Abuse

**235.** The Kings Bench Petition (November 2024) documents extensive evidence that:

• the trial court's October 7, 2022 order was not final;

• Plaintiffs' filings remained pending;

• the trial court and appellate courts treated Plaintiffs differently;

• PCDC and OCF received full hearings, arguments, and orders;

• Plaintiffs' constitutional claims were suppressed without review.

**236.** The Pennsylvania Supreme Court's denial of Kings Bench relief occurred without explanation, despite clear evidence of systemic judicial breakdown.

**237.** While federal courts must not review state judgments per Rooker-Feldman, Plaintiffs do not seek review—they seek redress for fraud, arbitrary conduct, discriminatory enforcement, state-created danger, denial of due process, and unconstitutional takings.

## HH. The Municipal Machinery Worked in Tandem with Judicial Machinery

**238.** L&I and the City of Philadelphia's conduct is inseparably intertwined with judicial actions, forming a single unconstitutional governmental enterprise.

**239.** This includes:

• consistently closing permits without inspection;

• ignoring drone footage, complaints, and photographs;

• refusing to enforce code against PCDC;

• dismissing violations against PCDC while enforcing against Plaintiffs;

• using "self-certifications" from PCDC's engineers;

• participating in a system that allowed PCDC to cause deterioration.

**240.** The City's deliberate inaction and protection of PCDC's conduct demonstrate "official municipal policy" under Monell.

## II. Takings Clause / Inverse Condemnation — Factual Basis

**241.** Plaintiffs were deprived of:

• possession,

• access,

• control,

• economic use,

• equity,

• safety,

• and marketability of title.

**242.** PCDC's unlawful entry, demolition, and deterioration—combined with judicial and municipal refusal to allow Plaintiffs access or hearings—constituted an uncompensated taking.

**243.** PCDC's February 28, 2024 transfer of 5105 Overbrook Avenue was an outright physical taking:

• the Trust was deprived of property;

• PCDC converted the property to a private buyer;

• no compensation was paid;

• the taking was effectuated through government machinery.

**244.** The 325 Property similarly experienced a regulatory taking, where government action rendered the property:

• inaccessible,

• unsafe,

• uninsurable,

• unsellable,

• and structurally compromised.

**245.** Both takings occurred under color of state law, rendering relief proper under § 1983.

**JJ. Plaintiffs' Harms Are Extreme, Irreparable, and Concrete**

**246.** Plaintiffs suffered:

• destruction of unique real property;

• deterioration caused by government-favored actors;

• loss of marketable title;

• loss of rental value;

• massive legal fees;

• structural damage caused by fraud;

• denial of statutory redemption rights;

• loss of federal rights;

• denial of access to courts;

• retaliation through disciplinary proceedings;

• lasting stigma and reputational harm.

**247.** These injuries are ongoing, severe, and redressable only in federal court.

## KK. Continuing Violations Doctrine

**248.** Every violation described herein continues:

• the unsafe conditions remain;

• Plaintiffs remain barred from the property;

• the docket remains closed to Plaintiffs;

• PCDC continues to assert control;

• the Overbrook deed remains recorded;

• municipal actors continue to deny enforcement;

• judicial officers continue to treat filings differently.

**249.** Each act is part of a continuous pattern, restarting limitations and sustaining

federal jurisdiction.

## LL. Summary of Operative Facts Supporting All Claims

**250.** Plaintiffs incorporate by reference every paragraph above.

These factual allegations establish:

• a multi-year RICO enterprise;

• joint participation between private entities, municipal actors, and judicial

machinery;

• discriminatory treatment lacking rational basis;

• procedural and substantive due process violations;

• unconstitutional takings;

• fraud, forgery, and invoice fabrication;

• structural and safety degradation;

• denial of appellate review;

• systematic barriers to access to courts;

• municipal customs and practices under Monell;

• ultra vires and void acts under Pennsylvania law.

**251.** These facts meet and exceed plausibility under Twombly and Iqbal.

**MM. Transition to Counts**

**252.** Plaintiffs now set forth Counts I through XV, each of which incorporates by

reference the factual allegations of Paragraphs 1–252, and each of which is

independently supported by the unconstitutional, fraudulent, discriminatory, and

racketeering conduct described above.

**253. Section VI (Counts)** follows.

## VI. CAUSES OF ACTION (COUNTS I-XV)

### COUNT I

<u>42 U.S.C. § 1983 — Fifth Amendment Takings</u>
*(Physical & Regulatory Takings, via Fourteenth Amendment Incorporation)*
*Against Defendants:*
City of Philadelphia; Department of Licenses & Inspections ("L&I"); Philadelphia Historical Commission; Bustamante; Bustamante Engineering; Philadelphia Community Development Coalition, Inc. ("PCDC"); David Champagne; Orphanides & Toner LLP ("OTLLP"); Toner Law Group, PLLC ("TLG"); Paul Toner; Mangual Demolition; Gardner Fox Associates; Hybar Construction; Moto Design Shop; Adam Montalbano; Ben Estepani; OCF Holdings LLC; OCF Realty LLC; Ori Feibush; Compass Real Estate; Hilary Lefkowitz-Karaman; Overbrook Titleholders Ke Qing Qing and Zhang Jin Fang.

## A. Physical Taking (Overbrook Property — 5105 Overbrook Avenue)

**254.** Plaintiffs incorporate by reference ¶¶ 1–253 as though fully set forth herein.

**255.** On February 28, 2024, Defendant PCDC, through its president David Champagne, executed and recorded a deed purporting to transfer 5105 Overbrook Avenue to Defendants **Ke Qing Qing** and **Zhang Jin Fang**, even though:

- PCDC never possessed legal title at any time;

- PCDC's conservatorship authority was **void ab initio** due to material misrepresentations in its insurance application (adjudicated by Judge Ann Butchart);

- PCDC's "Final Plan" was unlawful, unsupported, and non-compliant with Act 135 §1106(c)–(d);

- PCDC never demonstrated payment of conservatorship debts;

- PCDC therefore had **no statutory right or authority** to convey title;

- The Fassett Trust remained the lawful and equitable owner of the Overbrook Property.

**256.** This transfer constitutes a **per se physical taking** under the Fifth Amendment: Plaintiffs were dispossessed of their real property, and it was transferred to private third parties **without notice, without hearing, and without one dollar of compensation.**

## B. Regulatory Taking (325 S. 18th Street — 325 Property)

**257.** From 2016 through 2025, Defendants' acts, omissions, and jointly undertaken conduct deprived Plaintiff 325 LLC of:

- possession and access to the 325 Property;

- all meaningful and beneficial use;

- the right to enter or inspect;

- the ability to maintain, repair, or secure the structure;

- the right to redeem under Act 135 §1110;

- the ability to sell, refinance, or leverage equity;

- structural safety, stability, and physical integrity;

- insurance eligibility and marketability of title;

- code compliance, which the City simultaneously demanded of 325 LLC while refusing to enforce it against PCDC.

**258.** These deprivations resulted directly from the combination of:

- fraudulent Bustamante engineering reports,

- fake or inflated invoices (Gardner Fox, Mangual, Hybar),

- fraudulent permit "close-outs" by L&I without inspection,

- fabricated "Final Plan" submissions,

- the "closed docket" doctrine applied only to Plaintiffs,

- refusal to hear termination motions,

- refusal to compel statutory accountings under Act 135 §1106(d),

- insider-sale attempts to OCF Holdings,

- judicial adoption of PCDC's proposed orders without evidentiary review.

**259.** These cumulative actions destroyed all economically viable uses of the 325

Property and constitute a **regulatory taking** under *Penn Central Transportation*

*Co. v. New York City* and *Lucas v. South Carolina Coastal Council*.

## C. Takings Liability Applies to State & Private Actors Acting Under Color of Law

**260.** Defendants PCDC, Bustamante, Gardner Fox, Mangual Demolition, Hybar

Construction, Moto Design Shop, Compass, OCF Holdings, OCF Realty, and their

affiliated individuals acted:

- jointly with City actors (L&I, Historical Commission);

- with judicial enforcement and approval;

- with City tacit approval through permit fraud, non-enforcement, and selective application of legal doctrines;

- under a framework that constituted **joint participation with state actors**.

**261.** These entities therefore acted **under color of state law** for purposes of §1983 liability. Their coordinated conduct effectuated takings of Plaintiffs' property **without just compensation**, in violation of the Fifth and Fourteenth Amendments.

**Relief Sought Under Count I**

Plaintiffs seek:

- **Declaratory judgment** that physical and regulatory takings occurred;

- **Restoration of title** to 5105 Overbrook Avenue and full extinguishment of any unlawful conveyances;

- **Damages** equal to the full fair-market value of both properties at the time of taking;

- **Damages** for loss of equity, rents, deterioration, structural damage, loss of opportunity, loss of use, and consequential harm;

- **Just compensation** under the Fifth Amendment;

- **Injunctive relief** preventing any further deprivation, transfer, or tax-sale proceedings;

- **Costs and attorney's fees** under 42 U.S.C. §1988;

- Any other relief deemed just and proper.

**COUNT II**

<u>42 U.S.C. § 1983 — Fourteenth Amendment Procedural Due Process
Violations</u>
*Against: City of Philadelphia; L&I; Philadelphia Historical Commission; PCDC;
Champagne; Bustamante; OTLLP; Toner Law Group; Paul Toner; Mangual
Demolition; Gardner Fox; Hybar Construction; Moto Design Shop; Montalbano;
Estepani; Compass; Lefkowitz-Karaman; Overbrook Titleholders (for deed-based
relief only); Judges Fox, Powell, Anders, Padilla, Butchart (Official Capacity
Only).*

**262.** Plaintiffs incorporate paragraphs 1–261 as if fully set forth herein.

**A. Protected Property Interests**

**263.** Plaintiffs possessed constitutionally protected property interests, including:

- legal and equitable title to their properties;

- statutory rights under Act 135 §§1104, 1106, 1107, 1110;

- rights to hearings, accountings, and judicial review;

- rights of redemption;

- rights to possess, inspect, maintain, and control their properties;

- rights to appeal under Pa.R.A.P. 1925, 1931, 1935;

- rights to be free from fraudulent or ultra vires conveyances.

**264.** These rights cannot be extinguished without constitutionally adequate

procedures.

## B. Systematic Denial of Hearings and Access to Courts

**265.** Plaintiffs were denied **every process due under Act 135** and the Constitution, including:

- denial of mandatory termination hearings;

- denial of the mandatory final-plan hearing;

- denial of the statutory accounting under §1106(d);

- refusal to address void-ab-initio insurance;

- denial of inspection rights;

- refusal to consider motions alleging fraud, forged invoices, and safety hazards;

- refusal to address ultra vires conveyance of the Overbrook Property.

**266.** Judges Powell, Fox, Anders, Padilla, and Butchart—acting in their **official capacities**—systematically refused to:

- docket filings;

- rule on dispositive motions;

- issue required appellate opinions;

- transmit the record;

- schedule hearings;

- enforce statutory rights.

**267.** These actions constitute a **structural breakdown** in state procedure under *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), and *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010).

**C. Selective "Closed Docket" Doctrine Weaponized Against Plaintiffs**

**268.** The judicial defendants selectively applied a "closed docket" doctrine:

- Plaintiffs' filings were rejected as "moot," "closed," "procedurally improper," or "non-justiciable,"

- while PCDC/OCF filings in **the same docket** were accepted, docketed, and scheduled for **full argument**, including an eight-hour hearing.

**269.** This discriminatory procedural barrier was intentionally applied to Plaintiffs but not to PCDC or OCF.

**D. Record-Related Due Process Violations (Pa.R.A.P. 1925, 1931, 1935)**

**270.** Judge Powell repeatedly refused to issue required Pa.R.A.P. 1925(a) opinions—even after multiple Commonwealth Court notices.

**271.** The trial court repeatedly violated Pa.R.A.P. 1931 by **failing to transmit the record**, causing multi-year delays.

**272.** The Commonwealth Court quashed multiple appeals because the trial court never transmitted the record it was required to send.

**273.** These failures deprived Plaintiffs of appellate review, violating procedural due process.

**E. Municipal Procedural Violations**

**274.** L&I and the Historical Commission materially contributed to the violation of procedural due process by:

- accepting fraudulent engineering certifications;
- closing permits without inspection;
- refusing to enforce violations;
- refusing to inspect dangerous conditions;
- issuing approvals that contradicted public safety.

**275.** These failures made it impossible for Plaintiffs to obtain the process guaranteed by Act 135 and the Constitution.

**F. Procedural Violations in the Tax Petition Action (2020–2024)**

**276.** The City's tax enforcement proceedings further violated procedural due process because:

- the City sought taxes for years during which Plaintiffs were unlawfully ousted by state-enabled conduct;
- the City ignored verified record evidence of constructive ouster;
- the City refused to acknowledge that L&I's fraudulent permit closures and non-enforcement caused the tax delinquency;
- the City simultaneously barred 325 LLC from regaining possession while pursuing foreclosure.

**277.** This constitutes deprivation of property without meaningful process.

## G. Resulting Harm

**278.** Plaintiffs suffered:

- loss of property, equity, and rights;

- inability to appeal or obtain judicial review;

- unlawful tax liabilities;

- ongoing control by an invalid conservator;

- loss of access to courts and hearings.

**Relief Requested Under Count II**

Declaratory and injunctive relief; restoration of access; requirement of statutory accountings; vacatur of unlawful orders; restoration of title; damages; and attorney's fees.

## COUNT III

### <u>42 U.S.C. § 1983 — Substantive Due Process Violations (Arbitrary and Conscience-Shocking Conduct)</u>
***Against: City; L&I; Historical Commission; PCDC; Champagne; Toner; TLG/OTLLP; Bustamante; Mangual; Gardner Fox; Hybar; Moto; Montalbano; Estepani; Compass; Lefkowitz; Judges Powell, Fox, Anders, Padilla, Butchart (Official Capacity Only).***

**279.** Plaintiffs incorporate ¶¶ 1–278.

## A. Arbitrary and Irrational Government Conduct

**280.** Government actions violate substantive due process when they are arbitrary, irrational, or shock the conscience.

**281.** The following actions were arbitrary and irrational:

- refusing to enforce safety codes against PCDC while enforcing them against Plaintiffs;

- accepting fraudulent engineering reports without verification;

- refusing to inspect dangerous conditions visible to the public;

- allowing a conservator to operate after judicial findings of fraud;

- enabling the ultra vires sale of 5105 Overbrook;

- denying all hearings to Plaintiffs while scheduling full hearings for PCDC and OCF;

- supporting the collapse of the property while blaming Plaintiffs for resulting conditions.

## B. Allowing a Conservator to Operate Without Insurance (*Void Ab Initio*)

**282.** In the Overbrook case, Judge Butchart found that PCDC's insurance application contained material misrepresentations.

**283.** Under *Prudential v. Sartno*, *Aetna v. Ericksen*, and *Evans v. Penn Mutual*, such misrepresentations void the policy **ab initio**.

**284.** Allowing PCDC to act as conservator despite void insurance—after an express judicial finding of material misrepresentation—was arbitrary and shocks the conscience.

## C. Deterioration Caused by Government-Enabled Actors

**285.** Structural conditions at both properties deteriorated due to government-enabled fraud, including:

- water intrusion;

- failing chimneys;

- separated walls;

- rotted dormers;

- unsafe openings;

- unpermitted demolition;

- abandoned structural elements.

**286.** L&I's deliberate refusal to enforce code requirements or inspect conditions constitutes **state-created danger**.

## D. Substantive Due Process and Tax Enforcement

**287.** The City's tax enforcement for 2020–2024—while simultaneously preventing 325 LLC from entering or controlling the property—constitutes conscience-shocking conduct.

**288.** No legitimate governmental purpose is served by demanding taxes for years during which the City itself cooperated in the unlawful ouster.

**E. Judicial Participation in Arbitrary Conduct (Official Capacity Only)**

**289.** Judicial officers' conduct—including refusal to apply appellate rules, selective mootness, and shadow litigation for PCDC—was arbitrary and lacked any legitimate purpose.

**290.** These actions facilitated the destruction and uncompensated taking of Plaintiffs' properties.

**Relief Under Count III**

Declaratory and injunctive relief; restoration of statutory and constitutional protections; damages; and attorney's fees.

## COUNT IV

### 42 U.S.C. § 1983 — Equal Protection (Class-of-One and Selective Enforcement)
***Against: City; L&I; PCDC; Champagne; Toner; TLG; OTLLP; Judges Fox, Powell, Anders (Official Capacity Only).***

**291.** Plaintiffs incorporate ¶¶ 1–290.

**A. Similarly Situated Parties Treated Differently**

**292.** Plaintiffs were similarly situated to PCDC and OCF as parties in Act 135 proceedings.

**293.** Yet:

- Plaintiffs' filings were rejected as "moot," "closed," and "procedurally improper";

- PCDC/OCF filings were accepted, docketed, and heard on the merits.

**294.** Plaintiffs were denied all hearings; PCDC/OCF were granted full hearings—even after "closure."

## B. Selective Enforcement by L&I and the City

**295.** L&I refused to enforce code violations against PCDC but enforced them against Plaintiffs.

**296.** L&I closed permits "on paper," enabling PCDC's misconduct.

## C. Selective Enforcement in Tax Proceedings

**297.** The City pursued tax enforcement against 325 LLC for years when Plaintiffs were forcibly excluded.

**298.** Meanwhile, PCDC was protected from enforcement actions despite obvious violations.

**299.** No rational basis exists for this disparity.

## D. Discriminatory Intent

**300.** The disparate treatment was intentional, not accidental.

**301.** Judicial and municipal actions were aligned with PCDC's interests.

**Relief Under Count IV**

Declaratory judgment; injunctive relief; compensatory and punitive damages

(against non-municipal, non-judicial defendants); and attorney's fees.

# COUNT V

## 42 U.S.C. § 1983 — Civil Rights Conspiracy (42 U.S.C. § 1983 / § 1985(3))

Against: PCDC; Champagne; OTLLP; Toner Law Group; Paul Toner; Bustamante; Bustamante Engineering; Mangual Demolition; Gardner Fox; Hybar Construction; Moto Design Shop; Montalbano; Estepani; OCF Holdings; OCF Realty; Ori Feibush; Compass; Lefkowitz-Karaman; City of Philadelphia; L&I; Historical Commission; John/Jane Doe L&I Officials; Judges Powell, Fox, Anders, Padilla, Butchart (Official Capacity Only).

**302.** Plaintiffs incorporate ¶¶ 1–301 as if fully set forth herein.

## A. Existence of a Conspiracy

**303.** Defendants entered into an agreement—express or implied—to deprive

Plaintiffs of constitutional rights, including:

- their right to possess and control their properties,

- their right to due process,

- their right to equal protection,

- their right to be free from uncompensated takings,

- their right to appellate review,

- their right to challenge fraudulent conservatorship actions.

**304.** The agreement is demonstrated through:

- coordinated filings,

- repeated submission of fabricated engineering reports,

- coordinated permit closures without inspection,

- insider sales,

- judicial adoption of PCDC's proposed orders,

- shadow adjudication for PCDC/OCF while applying "closed docket" doctrine only to Plaintiffs,

- coordinated use of L&I's non-enforcement practices,

- coordinated refusal to acknowledge void-ab-initio insurance,

- and the City's tax enforcement designed to divest 325 LLC of title.

**B. Overt Acts in Furtherance of the Conspiracy**

**305.** Overt acts include:

1. **PCDC's filing of false Act 135 petitions** using fraudulent engineering reports;

2. **Bustamante's fabrication of structural certifications** used to seize control;

3. **L&I's fraudulent closing of permits** without inspection;

4. **Judicial officers' selective refusal** to hear Plaintiffs' filings;

5. **Toner and OTLLP/TLG's drafting of orders** adopted verbatim by the court;

6. **OCF's insider-sale negotiations** and intervention filings;

7. **Mangual Demolition's inflated "invoices"** and participation in staged deterioration;

8. **Compass and Lefkowitz's premature MLS listings** to facilitate sale of unlawfully controlled property;

9. **Moto/Montalbano/Estepani drafting contradictory plans** that concealed PCDC's defective work;

10. **City's tax enforcement** during the period of constructive governmental ouster.

**306.** These overt acts are numerous, continuous, and span over a decade.

## C. Purpose of the Conspiracy

**307.** The conspiracy's shared goal was:

- to obtain control of privately owned real estate,

- to force or facilitate insider transfers,

- to generate fraudulent invoices and financial gain,

- to shield the enterprise through selective procedural manipulation,

- to deprive Plaintiffs of their rights,

- to ultimately secure title for enterprise actors or municipal entities (e.g., Land Bank).

**308.** This constitutes a civil rights conspiracy actionable under both **§1983** and **§1985(3)**.

## D. State Action

**309.** Private defendants acted **under color of state law** by:

- jointly participating with municipal actors and judicial officers,

- using permit, code, and judicial machinery as instruments of deprivation,

- influencing L&I and Historical Commission processes,

- participating in judicially blessed insider transactions,

- relying on state coercive power for property control.

This satisfies *Dennis v. Sparks*, 449 U.S. 24 (1980), *Adickes v. S.H. Kress*, and Third Circuit precedent.

## E. Injury

**310.** Plaintiffs suffered:

- complete deprivation of property,

- complete deprivation of access to courts,

- financial losses,

- deterioration of structural assets,

- unlawful tax liabilities,

- deprivation of statutory redemption rights,

- reputational harm,

- lost equity and rents.

**Relief Under Count V**

Declaratory and injunctive relief; compensatory damages; punitive damages

(against non-municipal, non-judicial defendants); attorneys' fees.

## COUNT VI

### 42 U.S.C. § 1983 — First Amendment Retaliation (Access to Courts & Petition Clause)

Against: City of Philadelphia; PCDC; Champagne; OTLLP; Toner Law Group; Paul Toner; Judges Powell, Fox, Anders, Padilla, Butchart (Official Capacity Only).

**311.** Plaintiffs incorporate ¶¶ 1–310.

### A. Protected Activity

**312.** Plaintiffs engaged in protected First Amendment activity, including:

- filing motions to terminate the conservatorship,

- filing motions challenging fraud, invoices, safety conditions, and insurance,

- filing appeals,

- filing petitions to enforce statutory rights,

- filing complaints and objections with L&I,

- filing disciplinary and judicial complaints,

- filing the Kings Bench Petition.

## B. Retaliatory Actions

**313.** In response, Defendants engaged in retaliatory conduct designed to punish Plaintiffs for exercising their rights, including:

- denial of docket access,

- refusing to accept filings,

- rejecting motions as "moot" while hearing identical motions from PCDC,

- scheduling eight-hour arguments for PCDC while refusing to schedule hearings for Plaintiffs,

- solicitor-induced pressure on disciplinary authorities,

- discipline and retaliation against counsel immediately after entering appearance,

- tax enforcement with knowledge that Plaintiffs were unlawfully ousted from possession.

## C. Causal Connection

**314.** The timing demonstrates a clear causal link:

- The ODC filed a Petition for Discipline **two weeks after** counsel for 325 LLC entered her appearance in the Fassett matter.

- Judicial and municipal hostility escalated after Plaintiffs filed motions exposing fraud.

- Tax enforcement was initiated after years of Plaintiffs' attempts to regain access and expose L&I's fraudulent permit closures.

These facts satisfy causation under *Lauren W. v. DeFlaminis*, 480 F.3d 259 (3d Cir. 2007).

## D. Adverse Action

**315.** Plaintiffs suffered adverse actions that would deter a person of ordinary firmness from continuing litigation, including:

- total foreclosure from court access,

- refusal to rule on motions,

- years-long delays in transmitting the record,

- quashal of appeals based on trial court's procedural failures,

- retaliatory tax enforcement,

- exclusion from disciplinary proceedings and efforts to silence counsel.

## Relief Under Count VI

Declaratory relief, injunctive relief, compensatory damages, punitive damages (against private defendants), attorneys' fees.

# COUNT VII

## 42 U.S.C. § 1983 — Monell Liability (Municipal Policy, Custom, and Deliberate Indifference)

Against: City of Philadelphia; L&I; Philadelphia Historical Commission.

**316.** Plaintiffs incorporate ¶¶ 1–315.

## A. Municipal Policies, Customs, and Practices

**317.** The City and L&I maintained unconstitutional customs and practices, including:

1. **Closing permits without inspection**;

2. **Accepting fraudulent engineering reports** despite obvious defects;

3. **Refusing to enforce code violations against PCDC**;

4. **Selective enforcement against Plaintiffs**;

5. **Prioritizing PCDC/Toner influence through advisory committees**;

6. **Ignoring dangerous conditions reported by Plaintiffs**;

7. **Enabling PCDC's conservatorship despite void insurance**;

8. **Maintaining a "dual-track" enforcement system**—one for favored conservators, one for ordinary owners;

9. **Supporting tax enforcement against Plaintiffs** while protecting PCDC.

**318.** These acts constitute "custom and practice" under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

## B. Deliberate Indifference

**319.** The City acted with deliberate indifference to Plaintiffs' rights by:

- ignoring evidence of fraud,

- refusing to conduct inspections,

- ratifying contractor misconduct,

- ignoring structural collapse risks,

- enabling ultrà vires conveyances,

- accepting false certifications as a matter of routine.

## C. Municipal Liability

**320.** These policies, customs, and decisions were the **moving force** behind

Plaintiffs' constitutional injuries, including:

- takings,

- denial of due process,

- denial of equal protection,

- property deterioration,

- unlawful tax enforcement,

- loss of equity and rights.

## Relief Under Count VII

Declaratory relief, injunctive relief, compensatory damages, and attorneys' fees.

# COUNT VIII

## 42 U.S.C. § 1983 — State-Created Danger

Against: City of Philadelphia; L&I; Historical Commission; PCDC; Bustamante; Champagne; OTLLP; TLG; Toner; Mangual; Gardner Fox; Hybar; Moto; Montalbano.

**321.** Plaintiffs incorporate ¶¶ 1–320.

## A. Foreseeable and Specific Danger

**322.** Defendants affirmatively increased the risk of harm to Plaintiffs' properties by:

- falsely certifying work as "complete,"

- closing permits on paper without inspection,

- allowing dangerous structural conditions to worsen,

- permitting demolition, structural removal, and exposure to the elements,

- ignoring complaints, drone footage, and public safety reports.

## B. Affirmative Acts

**323.** The City and L&I took affirmative actions including:

- rubber-stamping fraudulent engineering reports,

- certifying "close-out" without inspection,

- ignoring visible hazards,

- issuing approvals that made the property unsafe.

## C. Relationship Between the State and the Harmed Party

**324.** Plaintiffs were foreseeable victims because:

- they were the property owners;

- the City knew Plaintiffs were excluded;

- the City knew Plaintiffs could not inspect or repair the properties;

- L&I's actions induced deterioration while imposing liability on 325 LLC.

## D. Deliberate Indifference

**325.** City officials acted with deliberate indifference by refusing to inspect despite overwhelming evidence that the properties were unsafe.

## E. Harm

**326.** Plaintiffs suffered physical, structural, financial, and constitutional injuries directly caused by the increased danger created by Defendants.

## Relief Under Count VIII

Declaratory and injunctive relief; compensatory damages; punitive damages against private contractors/actors; attorneys' fees.

# COUNT IX

## RICO — 18 U.S.C. § 1962(c) (Conduct of Enterprise Through Pattern of Racketeering Activity)[28]

Against: PCDC; David Champagne; Toner Law Group, PLLC; OTLLP; Paul Toner; Bustamante; Bustamante Engineering; Mangual Demolition; Gardner Fox; Hybar Construction; Moto Design Shop; Adam Montalbano; Ben Estepani; OCF Holdings; OCF Realty; Ori Feibush; Compass; Hilary Lefkowitz-Karaman; John/Jane Doe Private Actors 41–100.

**327.** Plaintiffs incorporate ¶¶ 1–326.

## A. Existence of an Enterprise — 18 U.S.C. § 1961(4)

**328.** Defendants formed an "enterprise," as defined by §1961(4), consisting of an association-in-fact among:

- PCDC,

- Toner/OTLLP/Toner Law Group,

- Bustamante Engineers,

- Mangual Demolition and its affiliated entities,

- Gardner Fox,

- Hybar Construction,

- Moto Design Shop (Montalbano & Estepani),

- OCF Holdings/OCF Realty/Ori Feibush,

- Compass & Lefkowitz-Karaman,

---

[28] See RICO Case Statement § III.A.2, § IV.6.

- other contractors, engineers, and insiders.

**329.** The enterprise had a **common purpose**: to unlawfully seize, control, monetize, and eventually transfer privately held real estate through corrupted Act 135 proceedings, fraudulent engineering, fabricated invoices, insider sales, judicial manipulation, and municipal non-enforcement.

**330.** The enterprise functioned with continuity from **2016 to 2025**, had hierarchical roles, and relied upon coordinated municipal approvals and judicial acts to effectuate property seizures.

## B. Defendants Conducted or Participated in the Enterprise — Reves Test

**331.** Each Defendant participated in the operation or management of the enterprise by:

- preparing fraudulent petitions and invoices (PCDC, Toner, OTLLP, TLG);

- submitting false engineering and structural certifications (Bustamante);

- generating fabricated or padded construction invoices (Mangual, Gardner Fox, Hybar);

- creating architectural plans designed to hide non-compliance (Moto, Montalbano, Estepani);

- positioning insider buyers (OCF, Feibush);

- publishing misleading listings (Compass, Lefkowitz-Karaman);

- coordinating with municipal actors (L&I; Historical Commission) to close permits without inspection.

These acts satisfy *Reves v. Ernst & Young*, 507 U.S. 170 (1993).

## C. Predicate Acts — 18 U.S.C. § 1961(1)

Defendants committed multiple predicate acts, including:

## 1. Mail Fraud — 18 U.S.C. § 1341

**332.** Defendants used the U.S. mail to transmit:

- fabricated invoices,
- false engineering reports,
- fraudulent insurance applications,
- altered bank letters,
- false conservatorship filings,
- MLS listings concealing structural defects,
- permit-closure documents.

## 2. Wire Fraud — 18 U.S.C. § 1343

**333.** Defendants used email, electronic court filings, and electronic communications to:

- coordinate insider sales,
- communicate forged or padded invoices,
- file fraudulent petitions,

- transmit false "completion" certifications,

- exchange architectural and engineering misrepresentations.

## 3. Financial Institution Fraud — 18 U.S.C. § 1344

**334.** Champagne, acting for PCDC, used fabricated documents to obtain federal SBA funds, later misappropriated to finance Act 135 litigation.

## 4. Obstruction of Justice — 18 U.S.C. §§ 1503, 1512

**335.** Defendants obstructed judicial proceedings by:

- influencing judicial officers,

- concealing critical information from the Historical Commission and L&I,

- generating conflicting architectural plans to obscure fraud,

- obtaining ex parte orders,

- participating in selective judicial "closed docket" practices.

## 5. Interstate Transportation of Stolen Property — 18 U.S.C. § 2314

**336.** The enterprise transported and laundered property interests and value extracted from Plaintiffs' properties (equity, rent value, and sale proceeds) through interstate wires.

## D. Pattern of Racketeering Activity

**337.** Predicate acts were:

- **related** — aimed at seizing and monetizing Plaintiffs' properties;

- **continuous** — spanning over a decade;

- **coordinated** — conducted jointly by multiple actors.

This satisfies the "relationship + continuity" test of *H.J. Inc. v. Northwestern Bell*.

## E. RICO Injury

**338.** Plaintiffs suffered:

- loss of property;

- loss of equity;

- deterioration of structures;

- legal fees;

- loss of redemption rights;

- fraudulent tax liabilities;

- ultra vires deed transfer of the Overbrook Property;

- all injuries enumerated in ¶¶ 246–247.

## Relief Under Count IX

Treble damages, attorneys' fees, costs, injunctive and declaratory relief, vacatur of fraudulent instruments, restoration of title.

# COUNT X

## RICO — 18 U.S.C. § 1962(d) (RICO Conspiracy)
### Against All RICO Defendants Identified in Count IX.

**339.** Plaintiffs incorporate ¶¶ 1–338.

## A. Agreement to Commit Predicate Acts

**340.** Defendants knowingly agreed to participate in the Enterprise through:

- fraudulent conservatorship filings,

- coordinated engineering fraud,

- permit manipulation,

- fake invoices and padded charges,

- insider sale preparation,

- concealment of hazards,

- obstruction of appellate review,

- tax manipulation during constructive ouster.

**341.** The agreement need not be express; it is established by coordinated action, timing, and mutual benefit.

## B. Overt Acts

**342.** Each predicate act pleaded under §1962(c) constitutes an overt act in furtherance of the conspiracy.

## C. Injury

**343.** Plaintiffs suffered the injuries detailed in Count IX; these injuries were the

natural and foreseeable result of the RICO conspiracy.

**Relief Under Count X**

Treble damages, attorneys' fees, costs, declaratory relief, and injunctive relief.

# COUNT XI

## Common-Law Fraud

Against: PCDC; Champagne; Toner; OTLLP; TLG; Bustamante; Mangual;
Gardner Fox; Hybar; Moto; Montalbano; Estepani; OCF; Feibush; Compass;
Lefkowitz-Karaman; Overbrook Titleholders (as transferees of a fraudulent deed).

**344.** Plaintiffs incorporate ¶¶ 1–343.

## A. False Representations of Material Fact

**345.** Defendants knowingly made false representations, including:

- certifications that structural repairs were completed;

- engineering reports stating roofs, chimneys, and walls were safe and

  compliant;

- invoices falsely stating work had been performed;

- false insurance applications;

- false "completion" statements to L&I;

- false MLS listings;

- fabricated bank letters;

- false representations that PCDC had statutory authority to sell 5105 Overbrook.

## B. Scienter

**346.** Defendants knew these statements were false or acted with reckless disregard for the truth.

## C. Intent to Induce Reliance

**347.** Defendants intended courts, L&I, the Historical Commission, and Plaintiffs to rely on these representations, and intended to induce:

- seizure of property,
- acceptance of invoices,
- closure of permits,
- entry of judicial orders,
- insider transfers.

## D. Justifiable Reliance

**348.** Judicial officers, municipal actors, and Plaintiffs relied or were compelled to rely on these representations.

## E. Damages

**349.** Plaintiffs suffered economic losses, structural damage, loss of title, loss of equity, and illegal tax liabilities.

**Relief Under Count XI**

Compensatory and punitive damages (against private parties), rescission,

restitution, cancellation of fraudulent deed.

# COUNT XII

## Civil Conspiracy (Pennsylvania Common Law)
Against All Private Defendants Except Judicial Officials.

**350.** Plaintiffs incorporate ¶¶ 1–349.

**A. Combination of Two or More Persons**

**351.** Defendants combined and agreed to accomplish unlawful objectives,

including:

- seizing properties through fraud,

- engineering deterioration,

- manipulating judicial processes,

- effectuating an ultra vires transfer,

- generating fraudulent invoices,

- concealing hazards,

- funneling properties to insiders.

## B. Overt Acts

**352.** Defendants acted in concert by:

- drafting the "PCDC team" architectural plans (Moto/Montalbano/Estepani) to conceal incomplete work;

- submitting fraudulent engineering reports (Bustamante);

- submitting fabricated invoices (Mangual, Hybar, Gardner Fox);

- knowingly marketing structurally dangerous property (Compass, Lefkowitz-Karaman);

- coordinating judicial outcomes (Toner/OTLLP/TLG with Judges Fox/Powell/Anders);

- executing the fraudulent 2024 deed for 5105 Overbrook.

## C. Malice

**353.** Defendants acted with malice—intending to injure Plaintiffs' property, financial interests, and legal rights.

## D. Damages

**354.** Plaintiffs suffered all economic, structural, reputational, and constitutional injuries detailed in ¶¶ 246–247 and throughout Count XII.

## Relief Under Count XII

Compensatory damages, punitive damages (for private defendants), attorneys' fees, joint and several liability.

# COUNT XIII

## Declaratory Judgment & Quiet Title (Ultra Vires and Void Transfers)
### *Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202*
Against: PCDC; David Champagne; Overbrook Titleholders (Ke Qing Qing & Zhang Jin Fang); Bustamante; Toner/OTLLP/TLG; Compass; OCF Holdings; OCF Realty; Ori Feibush.

**355.** Plaintiffs incorporate ¶¶ 1–354.

**A. Ultra Vires Conveyance of 5105 Overbrook Avenue**

**356.** On February 28, 2024, Defendant Champagne, acting as President of PCDC, executed a deed purporting to transfer 5105 Overbrook Avenue to Defendants **Ke Qing Qing** and **Zhang Jin Fang**, even though:

- PCDC never possessed legal title,

- PCDC's Act 135 authority was void ab initio (material misrepresentations in insurance applications),

- the conservatorship was legally invalid,

- the Final Plan lacked receipts, payments, and statutory code compliance,

- no court ever granted authority to convey the property,

- the deed was executed despite a live judicial record contesting PCDC's right to any distribution or sale.

**357.** The deed is therefore **void, ultra vires, and conveys no legal or equitable title**.

**B. Improper Interference With Title to 325 S. 18th Street**

**358.** With respect to the 325 Property, PCDC, Toner/OTLLP/TLG, OCF, and affiliated real estate actors engaged in:

- attempted insider transfers,

- fraudulent "final plan" filings,

- procurement of orders based on fabricated records,

- execution of an Agreement of Sale that expired under its own terms,

- continuing efforts to claim authority over title despite an invalid and non-compliant conservatorship.

**C. Right to Declaratory Relief**

**359.** An actual, substantial controversy exists between Plaintiffs and Defendants regarding title, statutory authority, and the validity of the transfers.

**360.** Under 28 U.S.C. § 2201, Plaintiffs seek a declaration that:

1. The February 28, 2024 deed to the Overbrook Titleholders is **void ab initio**.

2. PCDC never possessed authority to convey 5105 Overbrook.

3. Plaintiffs retain full and superior title.

4. No Defendant holds any valid, enforceable interest in either property by virtue of the unconstitutional conservatorships.

5. All claims of conservatorship-derived authority are null.

## D. Quiet Title

**361.** Plaintiffs seek to quiet title against all adverse claims, including those arising from:

- the ultra vires Overbrook deed,

- fraudulent invoices,

- forged or falsified engineering submissions,

- fabricated "final plans,"

- void insurance instruments,

- invalid agreements of sale.

## Relief Under Count XIII

- Declaratory judgment voiding the February 28, 2024 deed;

- Order restoring record title to the Fassett Trust;

- Declaratory judgment confirming 325 LLC's exclusive rights to 325 S. 18th Street;

- Striking and expunging all adverse claims;

- Cancellation of clouded or fraudulent instruments.

# COUNT XIV

## Conversion (Property, Equity, Funds, Use, and Possession)

Against: PCDC; Champagne; Toner; OTLLP; TLG; Bustamante; Mangual; Gardner Fox; Hybar; Moto; OCF; Feibush; Compass; Overbrook Titleholders.

**362.** Plaintiffs incorporate ¶¶ 1–361.

## A. Wrongful Dominion and Control Over Real Property

**363.** Defendants wrongfully exercised dominion and control over Plaintiffs' properties by:

- entering and occupying the 325 Property without authority;

- executing the February 28, 2024 deed for 5105 Overbrook Avenue without title;

- preventing Plaintiffs from accessing, inspecting, or repairing their own properties;

- causing deterioration through incomplete and destructive work;

- using the properties for financial leverage (e.g., insider sales, fraudulent billing).

## B. Wrongful Conversion of Equity, Value, and Rights

**364.** Defendants converted:

- Plaintiffs' equity,

- rental value,

- fair market value,

- rights of use and possession,

- tax benefits,

- redemption rights,

- marketability of title,

- structural integrity and physical condition,

- sale rights and financing capacity.

## C. Conversion of Funds and Proceeds

**365.** Defendants converted:

- sale proceeds,

- construction funds,

- third-party payments,

- federal and municipal program funds,

- invoice payments for work never completed.

## D. Plaintiffs Did Not Consent

**366.** Plaintiffs never consented to the use or deprivation of their properties, equity, or rights, and at all times objected to Defendants' conduct.

## E. Damages

**367.** Plaintiffs suffered:

- loss of the Overbrook Property (physical taking),

- destruction of structural value at the 325 Property (regulatory taking),

- deterioration caused by Defendants' fraudulent or incomplete work,

- clouded title,

- economic and consequential damages,

- the imposition of illegal and unconstitutional tax liabilities (City of Philadelphia v. 325 LLC).

**Relief Under Count XIV**

Compensatory damages, consequential damages, punitive damages (against non-municipal defendants), restitution, and full disgorgement.

# COUNT XV

## Unjust Enrichment / Accounting / Constructive Trust / Disgorgement

Against All Private Defendants and the City of Philadelphia (Equitable Relief Only as to Municipal Actors)

**368.** Plaintiffs incorporate ¶¶ 1–367.

## A. Unjust Enrichment

**369.** Defendants were enriched through:

- fraudulent invoices paid (or claimed) under Act 135,

- misappropriation of public and private funds,

- increased equity leveraged from Plaintiffs' properties,

- acquisition of 5105 Overbrook through an ultra vires deed,

- attempts to acquire 325 S. 18th Street at below-market insider prices,

- avoidance of code compliance,

- conversion of property use and value,

- the City's tax enforcement against 325 LLC while simultaneously adopting fraudulent L&I certifications that concealed the City's own wrongdoing.

**370.** Defendants' enrichment was unjust, because it resulted directly from:

- fraud,

- misrepresentation,

- statutory violations,

- unconstitutional conduct,

- void insurance,

- fabricated engineering and architectural statements,

- and violations of Plaintiffs' due-process, equal-protection, property, and appellate rights.

## B. Accounting

**371.** Plaintiffs seek a full accounting from Defendants for:

- all funds received in connection with both conservatorships,

- all invoices issued,

- all payments made or claimed,

- all federal, state, and municipal funds used,

- all settlement proceeds,

- all equity realized through insider sales or attempted sales.

**372.** This includes an accounting of tax liabilities wrongfully imposed on 325 LLC from **2020–2024**, years during which 325 LLC:

- was barred from the property,

- was prevented from inspecting, maintaining, or controlling the property,

- was harmed by the City's fraudulent reliance on false L&I "close-outs,"

- and was subjected to tax assessments that were unconstitutional, retaliatory, and unsupported by statutory authority.

## C. Constructive Trust

**373.** Plaintiffs seek a constructive trust over:

- 5105 Overbrook Avenue,

- all proceeds derived from its transfer,

- all profits and benefits derived from use or control of 325 S. 18th Street,

- federal funds, municipal funds, and private funds received through fraud.

## D. Disgorgement

**374.** Plaintiffs seek disgorgement of:

- all ill-gotten gains,

- payments for work never performed,

- sums collected under fraudulent invoices,

- any benefit conferred from ultra vires deeds,

- all equity extracted through the Act 135 enterprise scheme.

## E. No Adequate Remedy at Law

**375.** Because the injuries include unique real property, structural integrity, marketability of title, and constitutional harms, there is no adequate remedy at law, and equitable relief is required.

## Relief Under Count XV

- **Constructive trust** over properties, proceeds, and funds;

- **Full accounting**;

- **Restitution and disgorgement**;

- **Declaratory and injunctive relief**;

- **Equitable reformation** of fraudulent instruments.

## _PRAYER FOR RELIEF_

**WHEREFORE**, Plaintiffs **325 S. 18th Street, LLC** and **Bruce Fassett, Trustee for Sierra Fassett**, respectfully request that this Court enter judgment in their favor and against all Defendants, and award the following relief:

**I. Declaratory Relief**

1. A declaration pursuant to 28 U.S.C. § 2201 that Defendants' actions violated Plaintiffs' rights under the

   o Fifth Amendment (Takings Clause),

   o Fourteenth Amendment (Procedural and Substantive Due Process, Equal Protection),

   o 42 U.S.C. § 1983, and

   o RICO (18 U.S.C. §§ 1962(c), (d)).

2. A declaration that the February 28, 2024 deed purporting to transfer **5105 Overbrook Avenue** is **void ab initio**, ultra vires, legally null, and conveys no right, title, or interest.

3. A declaration that 325 S. 18th Street, LLC retains full legal and equitable title to **325 S. 18th Street**, and that all adverse conservatorship-based claims are null and void.

## II. Injunctive Relief

4. A permanent injunction restoring Plaintiffs' possession, access, quiet enjoyment, and full control of their properties.

5. A permanent injunction prohibiting Defendants from:

   o asserting conservatorship authority over either property;

   o enforcing ultra vires deeds;

   o interfering with Plaintiffs' access, inspection, use, control, or right to repair;

   o undertaking any further construction, demolition, modification, permitting, or conveyance;

   o imposing municipal liens or tax enforcement actions arising from periods in which Plaintiffs were barred from possession.

6. A mandatory injunction directing:

   o removal of all fraudulent or clouded instruments from the chain of title;

   o correction of municipal records;

   o reopening of suppressed filings;

   o correction of erroneous "closed docket" and "mootness" determinations.

### III. Just Compensation and Damages

7. **Just compensation** for the physical taking of 5105 Overbrook Avenue,

   including:

   - o  fair market value of the property,

   - o  equity lost,

   - o  consequential losses,

   - o  appreciation value.

8. **Regulatory-takings damages** for 325 S. 18th Street, including:

   - o  loss of use,

   - o  loss of access,

   - o  structural deterioration,

   - o  diminution of value,

   - o  lost rents and enjoyment.

9. Compensatory damages for:

   - o  conversion,

   - o  destruction and deterioration of property,

   - o  fraudulent and unperformed construction,

   - o  loss of marketability of title,

   - o  unlawful tax liability,

   - o  legal expenses caused by Defendants' misconduct,

- o emotional distress, stigma, and reputational harm.

10. **Special damages** for:

- o unlawful municipal tax assessments (2020–2024),

- o costs incurred defending unconstitutional enforcement actions.

## IV. RICO Damages (Treble)

11. Treble damages under **18 U.S.C. § 1964(c)** for:

- o injury to business or property,

- o predicate acts of fraud,

- o mail and wire fraud,

- o obstruction of justice,

- o unlawful receipt and transfer of proceeds,

- o enterprise-wide coordinated misconduct.

## V. Punitive Damages

12. Punitive damages against all **non-municipal** Defendants (PCDC, Champagne, Toner, OTLLP/TLG, Bustamante, contractors, realtors, OCF, titleholders, engineers, architects), for:

- o malicious, reckless, fraudulent, and conscience-shocking conduct.

## VI. Equitable Remedies

13. Imposition of a **constructive trust** over:

- o 5105 Overbrook Avenue,

- o all sale or transfer proceeds,

- o all funds collected through fraudulent or void invoices,

- o any benefit derived from insider transactions or the Act 135 enterprise.

14. **Restitution and disgorgement** of all ill-gotten gains.

15. A full **forensic accounting** of:

- o all funds received by PCDC, OTLLP/TLG, contractors, realtors, and affiliates;

- o all municipal or federal program funds;

- o all invoices claimed;

- o all payments asserted;

- o the City's tax assessments issued to 325 LLC from 2020–2024;

- o insurance funds, engineering submissions, and contractor payments.

16. Expungement of fraudulent filings, forged invoices, false certifications, and *ultra vires* deeds.

## VII. Costs and Fees

17. Award of:

- o reasonable attorney's fees,
- o costs of suit,
- o expert fees, and
- o litigation expenses under 42 U.S.C. § 1988 and 18 U.S.C. § 1964(c).

## VIII. Any Other Relief

18. Such other and further relief as the Court deems just, equitable, and proper,

including protective orders, remedial oversight, or structural injunctions

necessary to restore Plaintiffs' constitutional and property rights.

## JURY DEMAND

Pursuant to **Federal Rule of Civil Procedure 38**, Plaintiffs demand a **trial by jury**

on all issues so triable as of right.

Respectfully submitted,

/s/ *Olivia A. Adams*
Olivia A. Adams, Esquire
Supreme Court I.D.: 74118
30 Ardmore Avenue, #448
Ardmore, Pennsylvania 19003
T. 267.331.1872
E. oaaesq@yahoo.com
***Attorney for Plaintiffs***
325 S. 18th Street, LLC and
*Bruce Fassett, Trustee for*
*Sierra Fassett*

**Dated:** December 3, 2025

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND NATURE OF THE ACTION ...................................................... 2

JURISDICTION AND VENUE ........................................................................... 9

    A. Federal Question Jurisdiction – 28 U.S.C. § 1331 .................................. 9

    B. Civil Rights Jurisdiction – 28 U.S.C. § 1343(a) ..................................... 10

    C. RICO Jurisdiction – 18 U.S.C. § 1964(c) ............................................. 10

    D. Supplemental Jurisdiction – 28 U.S.C. § 1367(a) .................................. 10

    E. Sovereign Immunity and *Ex Parte Younge* ……………………………… 11

    F. Standing ........................................................................................ 11

    G. Venue – 28 U.S.C. § 1391(b) .............................................................. 12

    H. Personal Jurisdiction ....................................................................... 13

    I. Rooker–Feldman Does Not Apply/Abstention Not Applicable.................. 13

    J. Conclusion Jurisdiction ……………………………………………………… 14

PARTIES ...................................................................................................... 15

    A. Plaintiffs ……………………………………………………………………… 15

    B. Private-Actor Defendants .................................................................. 16

    C. Municipal Defendants ...................................................................... 23

    D. Judicial Defendants (Prospective Relief Only) ..................................... 24

    E. Doe Defendants ...............................................................................

DISTINCTION FROM PRIOR FEDERAL LITIGATION (NOT PRECLUDED) ......... 25

FACTUAL BACKGROUND ............................................................................. 32-84

# COUNTS (1-XV)

**COUNT I**:  *42 U.S.C. § 1983 — Fifth Amendment Takings* ………………….. 85

**COUNT II:**  *42 U.S.C. § 1983—Fourteenth Amendment Procedural Due Process Violations* …………………………………………………. 89

**COUNT III:**  *42 U.S.C. § 1983—Substantive Due Process Violations* (Arbitrar and Conscience-Shocking Conduct) …………………….. 93

**COUNT IV**:  *42 U.S.C. § 1983—Equal Protection* (Class-of-One and Selective Enforcement) …………………………………………. 96

**COUNT V**:  *42 U.S.C. § 1983—Civil Rights Conspiracy* (42 U.S.C.§ 1983/ § 1985(3) ………………………………………………………. 98

**COUNT VI**:  *42 U.S.C. § 1983*—First Amendment Retaliation (Access to Courts and Petition Clause) …………………………………… 102

**COUNT VII**:  *42 U.S.C. § 1983*—Monell Liability (Municipal Policy, Custom And Deliberate Indifference) …………………………………… 105

**COUNT VIII**:  *42 U.S.C. § 1983*—State Created Danger ……………………... 107

**COUNT IX**:  RICO—18 U.S.C.§ 1962(c)(Conduct of Enterprise Through ***Pattern*** of Racketeering Activity) ………………………………… 109

 A. The Enterprise 18 U.S.C. § 1964(4) …………………… 109
 B. Defendants Conducted or Participated in the
  Enterprise—Reves Test ............................................. 110
 C. **PREDICATE ACTS**
 1. Mail Fraud – 18 U.S.C. § 1341  .................................... 111
 2. Wire Fraud – 18 U.S.C. § 1343 .................................... 111
 3. Financial Instutions Fraud–18 U.S.C. § 1344 ………… 112
 4. Obstruction of Justice – 18 U.S.C. §§ 1503, 1512  ........ 112
 5. Interstate Transportation of Stolen Property
  18 U.S.C.§2314 ………………………………… 112

 D. Pattern of Racketeering Activity ................................ 113
 E. RICO Injury ................................................................ 113

 **RELIEF UNDER COUNT IX** ………………………………… 113

**COUNT X**:          RICO—18 U.S.C.§ 1962(d) (RICO Conspiracy) ………………..    114

      A.  Agreement to Commit Predicate Acts ………………    114
      B.  Overt Acts ………………………………………..    114
      C.  Injury …………………………………………….    115

**RELIEF UNDER COUNT X** ……………………………………    115

**COUNT XI**:          Common Law Fraud …………………………………………    115

**COUNT XII**:          Civil Conspiracy (Pennsylvania Common Law …………………    117

**COUNT XIII**:          Declaratory Judgement & Quiet Title (*Ultra Vires* & Void
      Transfers) Declaratory Judgement Act 28 U.S.C.
      §§ 2201-2202 ………………………………………....    119

**COUNT XIV**          Conversion (Property, Equity, Funds, Use & Possession) ………    122

**COUNT XV**          Unjust Enrichment/Accounting/Constructive Trust
      Disgorgement …………………………………………..    124

**PRAYER FOR RELIEF** …………………………………………    128

      I.          Declaratory Relief ……………………………….    128
      II.          Injunctive Relief …………………………………    129
      III.          Just Compensation & Damages ………………………    130
      IV.          RICO Damages (TREBLE) ………………………….    131
      V.          Punitive Damages ………………………………….    131
      VI.          Equitable Remedies ……………………………….    132
      VII.          Costs & Fees ………………………………………    132
      VIII.          Any of Relief ……………………………………..    133

**JURY DEMAND** ………………………………………………    133

**EXHIBITS (A-H)**

**EXHIBIT A:**  Judge Kenneth J. Powell's Series of Orders (March 19, 2021, March 22, 2021, and March 29, 2021; PCDC's "Lien" filed April 14, 2021 Against 325 S. 18th Street, Philadelphia, PA from 2021-Present)

**EXHIBIT B:**  Philadelphia Court of Common Pleas Series of Orders Declaring Plaintiff 325 LLC's Motions filed in *Walsh et al. v. Isabella, et al*, **PCCP May Term, No.: 04133** (From August 2022-November 2024) "Dismissed as Moot" or "Procedurally Improper as a Result of J. Powell's October 7, 2022 "Final Order"

**EXHIBIT C:** Judge Powell's Orders regarding Scheduling A Hearing vis-à-vis PCDC's September 22, 2025, Motion to Terminate Agreement Of Sale; and OCF Holdings' (OCF Realty, Ori Feibush) October 3, 2025, Motion to Intervene

**EXHIBIT D**: Commonwealth Court of Pennsylvania's Pa.R.A.P. 1935 Notices Directed to Judge Kenneth J. Powell, Jr. for Failure to Timely File Opinions and Transmit Trial Court Record

**EXHIBIT E:** 2020 DRONE Footage and Interior Shots (Provided by PCDC's Own Real Estate Broker/MLS) Showing Condition of 325 S. 18th Street, Philadelphia, after Purported Remediation Completion

**EXHIBIT F:** *PCDC v. Fassett,* PCCP **December Term, No.:00827**, Judge Ann M. Butchart's June 2025 Orders Finding PCDC Made Material Misrepresentations (Misstatements) on Multi-Years of Insurance Applications vis-à-vis 5505 Overbrook Avenue, Philadelphia, PA

**EXHIBIT H:** City of Philadelphia Unsafe Structure Stickers, Notices of Violations, etc. Issued October 31, 2022, November 4, 2022, and March 6, 2023 Against 325 S. 18th Street, citing the Very Work PCDC Claimed L&I Approved/Cleared and Violations Closed-Out

**RICO CASE STATEMENT**